FLOYD *et al. v.* VICKSBURG COOPERAGE CO.

(Division B. Feb. 17, 1930. Suggestion of Error Overruled, March 17, 1930.)

[126 So. 395. No. 27995.]

Vollor & Kelly and Chaney & Culkin, all of Vicksburg, for appellants.

**Brunini & Hirsch**, of Vicksburg, for appellee.

Argued orally by **John Brunini**, for appellee.

**Griffith, J.**, delivered the opinion of the court.

The second amended declaration is as follows:

"Comes Mary T. Floyd, in her own right, and Johnny Floyd, eighteen years of age, Edward Floyd, fifteen years of age, McLain Floyd, thirteen years of age, Dora Floyd, ten years of age, Mary Lee Floyd, eight years of age, Nora Bell Floyd, five years of age, Billie Floyd, two years of age, and Margie Floyd, one year of age, minors, by their mother and next friend, Mary T. Floyd, in this their amended declaration, filed by consent of the parties hereto, and by leave of court, and complains of the Vicksburg Cooperage Company, a corporation, and as a cause of action, makes the following statement of facts, to-wit:

"That the defendant, The Vicksburg Cooperage Company at the time of the injuries complained of herein, was, and now is, engaged in the manufacture of hoops, lumber and similar material, and being located in Vicksburg, Warren County, Mississippi, said injuries occurring on or about the 25th day of July, 1925. That at said time, and for some time prior thereto, B. P. Floyd, husband of the plaintiff, Mary T. Floyd, and father of the minors aforesaid, was employed by the defendant

Company, and that his duties required him to do and perform such work as from time to time might be assigned to him by the defendant.

"That on or about said date, that is the 25th day of July, 1925, the said B. P. Floyd, being then employed by the defendant Company, was sent from Vicksburg, Mississippi, by the defendant, to Ober Spur, in the state of Louisiana, to load some logs on cars of the defendant Company. That the defendant had theretofore provided and was, on said date, using a derrick for the purpose of loading and moving logs and timber, at said place, in the state of Louisiana, and that said derrick was equipped with various appliances and appurtenances, including log tongs, cables and similar appurtenances' and appliances.

"That after the said B. P. Floyd arrived at the place aforesaid, in the state of Louisiana, where he had been directed to go by the defendant, he undertook, as he had been directed to do, by the use of said derrick, to load said logs, and that after one of said logs had been elevated, by the use of said derrick, from the ground some distance, and while it was suspended in the air, the machinery aforesaid by reason of its old, defective, dangerous and unsafe condition, gave way and came loose from its fastenings to said log, causing the log to fall and causing the tongs, and appurtenance, to said derrick, to swing and strike him, the said B. P. Floyd, knocking him to the ground, wounding, bruising, mutilating and crushing him, and causing him to suffer, among other injuries, a fractured skull, from which injuries so suffered, on the following day, and after having been moved to his home in Vicksburg, Mississippi, he died, and that, during the time from the infliction of the injuries complained of to the time of his death, he suffered great mental and physical pain and anguish.

"Plaintiffs state that the defendant Company grossly and willfully neglected, failed and refused to perform its duties in the premises in that due to its gross neg-

ligence and carelessness, said machinery and all of its parts, appliances and appurtenances became old, worn, broken, defective and out of repair, and in a dangerous and unsafe condition, and that as a direct and proximate result of its said condition, the said B. P. Floyd was killed, and suffered as aforesaid, and that by reason of his death, plaintiffs had been deprived of his support, love and affection, and that by reason of the injuries suffered aforesaid, he, the deceased, was caused to suffer great physical pain and mental anguish, and the plaintiffs were put to great expense by way of medical attention and funeral expenses, all to the damage of the plaintiffs in the sum of fifty thousand ($50,000) dollars, for which amount, together with all costs, they bring this their suit, and demand judgment against the defendant company.''

To this declaration, in addition to the plea of the general issue, the defendant filed the following special plea:

''That the said B. P. Floyd was injured, from which death ensued and resulted, while working for the defendant in the state of Louisiana; that the state of Louisiana has what is known as the Workmen's Compensation Law and that said Workmen's Compensation Law, excludes all other remedies of the employee, his dependents or relatives on account of injury received in the said state of Louisiana; and that therefore the plaintiff cannot recover under their last amended declaration in this case in the courts of this state.''

To the said quoted plea the plaintiffs filed the following replication:

''That this suit, as shown by the record, was originally filed under the provisions of the Workmen's Compensation Law of the state of Louisiana, and was filed in the circuit court of Warren County, Mississippi, by the plaintiffs, through their attorneys, for the reason that the defendant is located and doing business in said coun-

ty and state with officers and agents residing therein, and that, in the state of Louisiana, it had no officers and agents upon whom process could be served, and could not, therefore, be filed and tried in Louisiana.

"That the defendant filed a demurrer to the original declaration that is the declaration wherein the plaintiffs sought to obtain the benefit of the Louisiana Workmen's Compensation Law which demurrer by reference hereto is made a part hereof as if fully copied herein.

"That plaintiffs, as shown by the record, and proceedings, when the suit was originally instituted, took the position that the Louisiana Workmen's Compensation Law excluded all other remedies. The defendant, at that time, took the position, as shown by its demurrer, that the Louisiana Workmen's Compensation Law had no application to a contract made in Mississippi, and that such law, in any event, could not be enforced in the state of Mississippi, and it obtained an adjudication from this court so holding.

"That the defendant, by reason of its former contention, as stated, and by reason of the judgment of this court sustaining its former contention to the effect that the compensation laws of the state of Louisiana did not apply, and could not be enforced in the state of Mississippi, is now estopped to make the defense now sought to be made in said special plea."

To the quoted replication defendant demurred as follows:

"1st: That the said replication is insufficient in law.

"2nd: That the demurrer to the original declaration filed herein as to its purport and effect speaks for itself; that the Louisiana Workmen's Compensation Law does exclude all other remedies; that it is in full force and effect in the state of Louisiana; that it can be enforced in that state; and that it is against the public policy of the state of Mississippi to enforce it in Mississippi."

The foregoing demurrer was sustained; plaintiffs declined to plead further; the case was dismissed; and plaintiffs appeal to this court.

As will be observed from the pleadings set out, it is the contention of appellee that the Workmen's Compensation Law of Louisiana governs the liability in this case, and that said law is exclusive. So far as the liability is concerned—the substantive law in that respect— appellee in this contention is clearly correct. "All the cases agree that, whatever the law of the forum may be, the plaintiff's case must stand, if at all, so far as his right of action is concerned, upon the law of the place where the injury occurred." Burns v. Grand Rapids & I. R. Co., 113 Ind. at page 176, 15 N. E. 230, 233; Davis v. Railroad, 143 Mass. 301, 9 N. E. 815, 58 Am. Rep. 138; Alabama G. S. R. Co. v. Carroll, 97 Ala. 126, 11 So. 803, 18 L. R. A. 433, 388 Am. St. Rep. 163; Cormo v. Boston Bridge Works, 205 Mass. 366, 91 N. E. 313; American Radiator Co. v. Rogge, 86 N. J. Law, 436, 92 A. 85, 944 A. 85; Johnson v. Nelson, 128 Minn. 158, 150 N. W. 620; Pullman Co. v. Lawrence, 74 Miss. 782, 22 So. 53; Vicksburg, S. & P. Railroad v. Porterfield, 103 Miss. at page 594, 60 So. 652; Western Union Telegraph Co. v. Jennings, 110 Miss. at page 674, 70 So. 830.

With the foregoing as its chief premise, appellee next contends that, without further, the cause was properly dismissed because the amended declaration does not declare on the said Louisiana statute. Appellee says that, whenever a right of action is based on a foreign statute, the declaration must plead that statute, else no cause of action is shown—citing 36 Cyc. 1240. This is not the rule in this state, and has not been since the enactment of section 1015, Code 1906 (section 771, Hem. 1927 Code), which section reads as follows: "When any questions shall arise as to the law of the United States, or of any other state or territory of the United States, or of the District of Columbia, or of any foreign country, the court shall take notice of such law in the

same manner as if the question arose under the law of this state." Thus the rule now is the same as if the question arose under a domestic statute, which rule is this: "In accordance with the usual rule that it is never necessary in pleading to state matter which the court is supposed to know and of which it is bound to take judicial notice, public statutes need not be pleaded. . . . It is sufficient to state facts bringing the case within the statute." 20 Enc. Pl. & Pr., pp. 594, 595.

The supreme court of Connecticut, in which state there is a statute similar to ours, said in Warneke v. Preissner, 103 Conn. at page 505, 131 A. 25, 26: "Our courts are now authorized to take judicial notice of the statutes . . . of other states, and this would obviate any necessity of pleading the provisions of that law;" and the court said further that, when the necessary implication from the facts pleaded is that the cause must be determined by the law of the foreign state, it is not necessary to so aver, for "what is necessarily implied need not be expressly alleged." The proposition is essentially the same in principle as that involved in Grand Trunk W. R. Co. v. Lindsay, 233 U. S. 42, 34 S. Ct. 581, 58 L. Ed. 838, 842, Ann. Cas. 1914C, 168, wherein the holding was against the argument here made by appellee. Indeed, had the pleader expressly pleaded and relied on the law of this state, the reference in the declaration in that respect would not have vitiated the pleading since the facts shown as facts are sufficient (section 729, Code 1906 [section 526, Hem. 1927 Code]) to bring it under the only law that is applicable, namely, the Louisiana law. This was expressly so held in Missouri, K. & T. Ry. Co. v. Wulf, 226 U. S. 570, 33 S. Ct. 135, 57 L. Ed. 355, Ann. Cas. 1914B, 134. It is not a case where more than one law may be involved, as was the case in Southern Ry. Co. v. Maxwell, 117 Miss. 62, 77 So. 905.

The third contention of appellee is that the remedy prescribed under the Louisiana Compensation Law is

exclusive, as well as the right; and that, the remedy being exclusive, it cannot be applied extraterritorially. In other words, that the right and the remedy are so completely blended, so inseparable, that no court other than the Louisiana courts may give relief. It is true that, where a statute creates a new right, and at the same time and by the same statute there is inseparably coupled with the right a special remedy for its enforcement, the statutory remedy, if coextensive with the right, is usually held to be exclusive; but it is well settled that, where the statute does not create a new right, or if a new right, the remedy is separable, the remedy prescribed will, in the forum of another state, be regarded as cumulative and not as exclusive. This is still true, although the right is one existing by virtue of some previous statute or statutes, and even where the instant statute contains an express provision that the right can, be enforced only in the state enacting the statute. The latter, exactly, was the case in Tennessee, etc., Co. v. George, 233 U. S. 354, 34 S. Ct. 587, 58 L. Ed. 997, L. R. A. 1916D, 685, wherein the court rejected the contention of exclusiveness of remedy and relied upon the previous decision of the court in Atchison, T. & S. F. R. Co. v. Sowers, 213 U. S. 55, 70, 29 S. Ct. 397, 53 L. Ed. 695, 702. See, also, Dennick v. Central R. R. Co., 103 U. S. 11, 26 L. Ed. 439; Clark v. Russell, 97 F. 900, 38 C. C. A. 541; Stewart v. Baltimore & O. R. Co., 168 U. S. 445, 18 S. Ct. 105, 42 L. Ed. 537; Higgins v. Central, etc., R. Co., 155 Mass. 176, 29 N. E. 534, 31 Am. St. Rep. 544. These cases, together with the elaborate discussion of the applicable principles in Texas Pipe Line Co. v. Ware (C. C. A.) 15 F. (2d) 171, are sufficient, as applied to the facts of the case at bar, to dispose adversely of this contention of appellee.

The Louisiana Compensation Law (Act No. 20 of 1914, as amended) does not create any new right with respect to liability for death by wrongful act. Such a liability, together with survivorship of the cause of action, had

been recognized and enforced in that state long before the enactment of the Compensation Law. The said law merely fixes a definite maximum and minimum of recovery for death and the manner of its payment, and definitely nominates the surviving beneficiaries. The Louisiana law governs, of course, in the measure of damages, for this pertains to the right rather than the remedy. 2 Wharton on Conflict of Laws (3 Ed.), pp. 1108-1112. The normal scheme of that law is that the damages or compensation, call it either, shall be paid in monthly installments; nevertheless there are provisions for the commutation of the payments into a final and conclusive lump sum. We have not sufficient of the facts before us to see whether a properly calculated final commutation sum could or could not, in this case, be worked out and entered as a definite final judgment in the circuit court, or whether, without this, the case might not be accommodated by several judgments under sections 813 and 814, Code 1906 (sections 615 and 616, Hem. 1927 Code). It not being shown to us that this cannot be done, we must at least say that we cannot turn the plaintiffs out of court with no more before us than the present record. Moreover, and in the last resort, the cause can be transferred to the chancery court. That court, by reason of its plenary power to mould its decrees so as to conform to the full limits of the details of any justiciable right, can make and enforce in all essential respects the same orders and decrees that could the courts in Louisiana, were the case there.

The cases already cited are all the authority necessary that, in applying the remedy, the law of the forum controls, and that the court, having jurisdiction of the parties, applies the remedies of the forum as nearly as practically possible to the rights existing under the foreign law. It is not necessary that the remedy shall be identical with that of the foreign jurisdiction nor that the method of enforcement should be the same; for, if entire similarity were required in these respects, the

rule of comity could have but little practical operation. It is only necessary, since we have full jurisdiction of the parties, that consistently with our procedural law, and by the use of the means it affords, either in the circuit or chancery courts, we are able to do substantial justice between the parties under the rights existing by virtue of the foreign substantive law. All this, and all that we have hereinabove said are upon long-established and well-settled principles of the law. We do not find it necessary at all to go, even if we would, to the length taken by the supreme court of North Carolina in Johnson v. Carolina C. & O. Ry. Co., 191 N. C. 75, 131 S. E. 390, then without a Compensation Law, as our state now is, wherein the court cast overboard the whole doctrine of comity, and, rather than put one of its own citizens out of court, on the contention that the law of the foreign state exclusively furnished the remedy as well as the right, and thus deny him any remedy for a tort which occurred in another state, the latter being a Compensation Law state, the court closed its eyes to the foreign law and applied the common law of the forum, not only as to the remedy but also as to the right.

Finally, it is the contention of appellee that the said Compensation Law is contrary to the public policy of this state, and for that reason will not be given countenance or the support of any enforcement here. Generally, the rule is that the courts of one state will not by comity enforce rights arising under the law of a foreign state, if the law of the latter, in respect to the asserted right, is in violation of the public policy of the state of the forum. But, in order that the stated rule shall apply, it is necessary that the foreign law shall be repugnant to the settled sentiments of good morals or natural justice of the state of the forum or will be injurious to its own citizens. Northern Pacific R. R. Co. v. Babcock, 154 U. S. 190, 14 S. Ct. 978, 38 L. Ed. 958; St. Bernard v. Shame (C. C. A.) 220 F. 852; Lauria v. E. I. Du Pont De Nemours (D. C.) 241 F. 687; Evey

v. Mexican Cent. R. Co. (C. C. A.) 81 F. 294, 38 L. R. A. 387. It is enough to say here, as applied to the case at hand, that it is not contrary to our laws or conceptions of justice and good morals to give a remedy for wrongful death, and a survivorship of the cause of action, for that exactly is what we do under our own law; and upon the point of injury to our own citizens that distinctly would not be true here, for, if we did not allow the remedy in this cause, the plaintiffs herein, who are our own citizens, would have no remedy and no relief, since they are not able to get a remedy or any relief in the foreign state, because of the absence of the defendant, now and at all times from the beginning, from that state, and of any agent there on whom process may be served; and this amounts to a principle, for it would apply, not only to these particular plaintiffs, but generally to all in a similar situation.

The declaration, as it will be observed, does not state the wages which the deceased employee was earning at the time of his injury. Under the Louisiana law, the amount of the recovery is based upon the amount of the wages. The declaration does allege, however, the fact of employment and that the deceased was an employee at the time. There is the presumption, therefore, that the employee was receiving wages in some amount, which would save the declaration from dismissal for no cause of action, as was done. Upon a return of the case, the declaration may be properly amended, as the plaintiffs may be advised, to make definite averments of the necessary facts to conform to the law of the case, so far as herein determined, and such further amendments as may be necessary to adequately present the facts so as to obtain a full and proper adjudication of the cause along the lines indicated. If the circuit court shall be of opinion, when the facts are fully pleaded or when fully developed by the evidence, that the circuit court is without power to so frame a judgment or judgments as to do substantial justice to the parties under

said foreign law, the court may transfer the cause to the chancery court which has the adequate machinery. We would ourselves order the transfer, but we have not before us sufficient facts to enable us now to pass upon this question, or whether there be any such necessity.

Reversed and remanded.