76 So.2d 460 (1954)
Leamon E. COBB, Plaintiff-Appellant,
v.
INTERNATIONAL PAPER COMPANY et al., Defendants-Appellees.
No. 8232.
Court of Appeal of Louisiana, Second Circuit.
December 1, 1954.
John J. McKeithen, Holmes M. Mouser, Columbia, for appellant.
Hudson, Potts, Bernstein & Davenport, Monroe, for Maryland Cas. Co.
Madison, Madison, Files & Shell, Bastrop, for International Paper Co.
AYRES, Judge.
Plaintiff instituted this action against the International Paper Company and its compensation insurer, Maryland Casualty Company, under the Workmen's Compensation Act of Louisiana, LSA-R.S. 23:1021 et seq., for compensation for injuries alleged to have been sustained by him in the course and scope of his employment for the first named defendant at Natchez, Mississippi.
The defendant insurer excepted to plaintiff's petition on the ground that it disclosed no right or cause of action against it as the alleged compensation insurer inasmuch as the direct action statute, LSA-R.S. 22:655, was inapplicable for the reason, as stated in the petition, the alleged accident and injury occurred outside the State of Louisiana. This exception was sustained, and from the judgment dismissing plaintiff's action as to that defendant, no appeal was taken.
The defendant, International Paper Company, filed an exception or plea to the jurisdiction of the court, alleging that while *461 it is a foreign corporation domiciled in the State of New York but authorized to do and doing business in the State of Louisiana, where it has an agent for the service of process, the contract of plaintiff's employment or hiring was made in the State of Mississippi, where it was to be performed entirely; that the alleged accident occurred in the State of Mississippi, and that the contract of hiring and the performance of all work in connection therewith occurred in Mississippi. This exception was sustained and judgment was rendered and signed dismissing plaintiff's action as to this defendant. From the judgment thus rendered plaintiff was granted a devolutive appeal.
It is conceded, and correctly so, that where a contract of employment is entered into in this State, our Compensation Statute will be given extra territorial effect. Selser v. Bragmans Bluff Lumber Co., Inc., La.App., 146 So. 690; McKane v. New Amsterdam Casualty Co., La.App., 199 So. 175; Ohlhausen v. Sternberg Dredging Co., 218 La. 677, 50 So.2d 803. Where neither the harm occurred nor the contract of employment was made in this State, no recovery can be had under the Louisiana Workmen's Compensation Act. Restatement of the Law on Conflict of Laws, Chapter 9, § 400, page 488.
The sole question, therefore, to be determined is whether or not the contract between plaintiff and International Paper Company was a Louisiana contract. This is a question of fact dependent for solution upon the evidence in the record. The evidence discloses that plaintiff had previously been employed with International Paper Company at its Natchez, Mississippi, plant and, in fact, during the construction of its first unit, and after completing that employment, he was employed for other concerns at various localities and particularly at Camden, Arkansas. However, plaintiff returned to Natchez, called upon J. P. Cobb, a cousin, who was superintendent of construction for the International Paper Company, and applied for work as a steel worker. The superintendent informed plaintiff there was no work available at that time. This took place on the site in Natchez, Mississippi. Cobb testified that if a job became available he would be glad to telephone plaintiff at his residence in Columbia, Louisiana, to that effect. He did so, and plaintiff proceeded, probably the next day, to Natchez, where he applied to defendant's personnel office, produced his social security card, gave the history of his personal status, which information was recorded in the employment files, and signed a document termed "Employment Record", which, above his signature, stated:
"The applicant agreed that in the event he is employed by the Company, the rate of compensation paid him shall not be deemed to indicate an employment for the period used in reckoning compensation, or for the period between wage payments; but the duration of such employment shall be indeterminate and may be terminated at any time by the Company. Applicant further agrees to accept employment with the Company with the understanding that all statements made in this application are represented by him to be true and such representations shall become a part of the terms of employment."
This document was dated October 19, 1951, and below his signature his employment as a structural steel worker in the Construction Department, as well as his rate of pay and other data, was noted.
Plaintiff's recollection was indefinite as to the date be began work following his report to the plant at Natchez. The date given on the employment record evidences his work actually began later than the day he reported.
Plaintiff contends that the offer made to him over the telephone by the superintendent and his acceptance constituted the contract of employment and that such was a Louisiana contract. In the first place, it might be contended with greater accuracy that plaintiff made an offer of employment while personally present at defendant's plant in Natchez and that the object of the telephone call was merely to inform him of the acceptance in Natchez *462 of his offer, presuming that the substance of the telephone conversation was sufficient to and did constitute a contract. With the contention that it did constitute such a contract we are not in accord. For instance, plaintiff testified as to the substance of the superintendent's conversation:
"Well, I don't know the exact words other than he just told me he had a job available over there to go to work";
and in answer as to whether he had seen the superintendent before, he said:
"I went over there and contacted himone of the times that I went, I didn't even get to see himhe told one of the boys who worked in the office that there wasn't anything available right then and he would let me know when it was."
This took place at Natchez at defendant's plant.
"Q. And at that time, Mr. J. P. Cobb told you that there was no iron work available but that he would let you know when there was an available job. Is that correct? A. Yes, sir.
"Q. Then he called you later on, this conversation that you allege took place in July but you don't know whether it was July, 1951, he then called you and told you that there was an available job? A. Yes, sir; and the conversation was, when I went over there to see him about going to work, and I think I have already stated this, that he didn't have anything for me right then, but he said, `I'll get in touch with you' or something to that effect, `when it does get ready'. Then, when work got available, he just called me.
"Q. Now, Mr. Cobb, that conversation that you have just related took place in Natchez, Mississippi? A. On the job site, Natchez, Mississippi, at the paper mill."
J. P. Cobb corroborated plaintiff as to the conversation in Natchez and testified that in response to that conversation he phoned plaintiff there was a job available if he would come over there.
The transaction relative to plaintiff's employment occurred in Natchez, Mississippi, and his employment was not completed or accepted until he reported to defendant's personnel office when and where he made formal application, gave the necessary data and executed the forms required as a prerequisite. Under the circumstances, the fact that plaintiff was notified by telephone conversation that a job was available for which he had previously in person while in Natchez, Mississippi, inquired about, did not constitute a contract of employment. Our conclusion, based on a consideration of all the evidence, is that plaintiff's contract of employment was a Mississippi contract, entered into and accepted in that State where the contract was to be entirely performed and all work done pursuant thereto, and that as such it is governed not by the compensation laws of Louisiana but by the appropriate laws of the State of Mississippi. In passing, it may be appropriate to say, too, that plaintiff continued in defendant's employ until the date of his alleged accident and that thereafter he received weekly compensation payments pursuant to the laws of State of Mississippi for a period of 82 weeks.
The case of Ohlhausen v. Sternberg Dredging Co., 218 La. 677, 50 So.2d 803, cited by plaintiff, is inapposite to the situation here. There, as held by the Supreme Court, the contract of employment was entered into in Louisiana, whereas we find the contract of employment involved here was entered into in the State of Mississippi where the work was contemplated and was to be done and was actually performed. As observed, the dredging company, a Delaware corporation with its principal office in Missouri, was engaged in work of a transient nature through several southern states, with two branch offices in Louisiana, with the captain in charge having full authority to handle its transactions, particularly hiring and firing of the employees, without futher approval of the Company. The construction superintendent in the instant case had no such authority and, moreover, the work was not of a transient nature but confined to its plant located in the State of Mississippi.
*463 The facts in Williams v. Travelers Ins. Co. of Hartford, Conn., La.App., 19 So.2d 586, disclose a situation very similar to the one now before us. The employee was in South Carolina and defendant's principal office was located in New Orleans, where negotiations commenced and finally terminated in the employment contract, consummated in a long distance telephone conversation between the employee in South Carolina with defendant's insured's agent. The contract was held to constitute a Louisiana contract.
The fact that the employment contemplated not transient work but work at a permanent location in Mississippi adds weight to the conviction that the parties' intention was to have their contract treated as a Mississippi contract where the contract was entered into and where the work was to be performed.
For the reasons assigned, the judgment appealed is affirmed at appellant's costs.