243 So.2d 882 (1971)
Jim D. SMITH
v.
GLOBE INDEMNITY CO.
No. 8167.
Court of Appeal of Louisiana, First Circuit.
February 1, 1971.
*883 W. P. Macmurdo, of Percy, Macmurdo & Gray, Baton Rouge, for appellant.
Joseph A. Gladney, Baton Rouge, for appellee.
Before LANDRY, ELLIS and BLANCHE, JJ.
LANDRY, Judge.
Defendant-appellant, Globe Indemnity Company (Globe), a New York corporation authorized to do business in the State of Louisiana, insurer of plaintiff's employer, Marsh Wrecking Company of Nashville, Tennessee, appeals the judgment of the trial court awarding plaintiff workmen's compensation benefits pursuant to the Tennessee Workmen's Compensation Statute. It is conceded that plaintiff was injured while in Marsh's employ; that the accident occurred in Nashville, Tennessee, on or *884 about November 4, 1966, and that the contract of employment was entered into in the State of Tennessee. Also undisputed is the fact that at the time of institution of suit, plaintiff herein was a bona fide resident of Louisiana. Globe is authorized to do business in this state and was served with process herein through the Secretary of State. We affirm the judgment rendered below.
Appellant urges that the trial court erred as a matter of law in finding that the courts of Louisiana have jurisdiction over the subject matter of this action when both the contract of employment and the disabling accident occurred in Tennessee. Appellant also urges the trial court erred in finding that plaintiff was totally and permanently disabled pursuant to the Tennessee law which defines total permanent disability as incapacity to engage in any occupation which brings the injured employee an income.
The instant suit is not the first in which the courts of this state have been called upon to determine whether the Louisiana courts have, or may assume, jurisdiction over foreign corporations authorized to transact business in this state and having agents for service of process, in causes of actions arising in another state.
In Staley-Wynne Oil Corporation v. Loring Oil Co., 182 La. 1007, 162 So. 756, our own Supreme Court was squarely presented the question whether our courts have jurisdiction over foreign corporations authorized to transact business in this state, and having agents for service of process, in instances where the cause of action arises in another state. In determining that Louisiana courts lacked jurisdiction in such instances, our Supreme Court relied upon the terms of Act 184 of 1924, Section 2, which provides:
"The appointment of the agent or agents or officer upon whom service of process may be made shall be contained in a written power of attorney accompanied by a duly certified copy of the resolution of the Board of Directors of said corporation consenting and agreeing on the part of the said corporation that any lawful process against the same which is served upon the said agent or officer shall be a valid service upon said corporation and that the authority shall continue in force and be maintained as long as any liability remains outstanding against said corporation growing out of or connected with the business done by said corporation in this State." (Italics ours.)
The court, in Staley-Wynne, above, also cited and relied upon Louisville & N. R. R. Co. v. Chatters, and Southern Ry. Co. et al. v. Chatters, 279 U.S. 320, 49 S.Ct. 329, 73 L.Ed. 711, wherein the United States Supreme Court declared:
"A foreign corporation is amenable to suit to enforce a personal liability if it is doing business within the jurisdiction in such manner and to such extent as to warrant the inference that it is present there. Lafayette Insurance Co. v. French, 18 How. 404, 15 L.Ed. 451; Connecticut Mutual Life Ins. Co. v. Spratley, 172 U.S. 602, 19 S.Ct. 308, 43 L.Ed. 569; St. Louis Southwestern Ry. v. Alexander, 227 U.S. 218, 33 S.Ct. 245, 57 L.Ed. 486 (Ann.Cas.1915B, 77). Even when present and amenable to suit it may not, unless it has consented, Pennsylvania Fire Ins. Co. v. Gold Issue Mining Co., 243 U.S. 93, 37 S.Ct. 344, 61 L.Ed. 610; Smolik v. Phila. & Reading Coal Co. (D.C.) 222 F. 148, be sued on transitory causes of action arising elsewhere which are unconnected with any corporate action by it within the jurisdiction Old Wayne Mut. Life Ass'n v. McDonough, 204 U.S. 8, 27 S.Ct. 236, 51 L.Ed. 345; Simon v. Southern Ry. Co., 236 U.S. 115, 35 S.Ct. 255, 59 L.Ed. 492."
It is clear that in Staley-Wynne, above, our Supreme Court denied jurisdiction on the dual ground that our own statute permitted suits against foreign corporations only upon actions arising in this state and that the due process clause of the Fourteenth Amendment to the United States
*885 Constitution was a barrier against assumption of jurisdiction of causes of actions originating in other states.
It appears, however, that the constitutional barrier imposed by Louisville & N. R. R. Co. v. Chatters, above, was removed by the United States Supreme Court in Perkins v. Benguet Consolidated Mining Company, 342 U.S. 437, 72 S.Ct. 413, 96 L.Ed. 485 (March 3, 1952). In Perkins, above, the United States Supreme Court met the issue squarely and held, that absent a jurisdictional question predicated upon lack of proper notice, the due process clause of the United States Constitution neither prohibits a state from opening its court to an action arising in another state nor compels a state to do so. Perkins, above, concluded that provision for making foreign corporations subject to service in a state is therefore a matter of legislative discretion. In this regard, Perkins, above, notes as follows:
"This conforms to the realistic reasoning in International Shoe Co. v. Washington, supra, 326 U.S. [310] at pages 318-319, 66 S.Ct. at pages 159-160 [90 L.Ed. 95, 103, at 104, 161 A.L.R. 1057]: ` * * * there have been instances in which the continuous corporate operations within a state were thought so substantial and of such a nature as to justify suit against it on causes of action arising from dealings entirely distinct from those activities. See Missouri, K. & T. R. Co. v. Reynolds, 255 U.S. 565, 41 S.Ct. 446, 65 L.Ed. 788; Tauza v. Susquehanna Coal Co., 220 N.Y. 259, 115 N.E. 915; cf. St. Louis S. W. R. Co. v. Alexander, supra (227 U.S. 218, 33 S.Ct. 245, 57 L.Ed. 486) [Ann.Cas. 1915B, 77]."
It is not disputed that present defendant has had substantial continuous contacts with this state pursuant to the conduct of its insurance business here. Neither is adequacy of notice an issue in this instance. Consequently, Perkins, above, precludes any defense of lack of jurisdiction predicated upon denial of due process. Since the United States Constitution neither prohibits Louisiana from assuming jurisdiction herein nor compels us to do so, resolution of the issue must turn upon the provisions of our own laws governing foreign corporations doing business in this state.
In this respect we initially note that Act 184 of 1924 (LSA-R.S. 12:202), a part of our general corporation law, has been supplanted by Act 105 of 1968, Section 1 (LSA-R.S. 12:301, 12:304, 12:308 and 12:310). These revisions delete all reference to the extent to which appointment of an agent constitutes corporate consent to suit in this state.
Such change in our general corporate law must be deemed significant in that it appears to evince a legislative expansion of assumption of jurisdiction over foreign corporations. However, the obvious policy change noted in our corporate code is not necessarily controlling. In this respect we note express provision in our insurance law which we deem decisive of the issue at hand. We refer to LSA-R.S. 22:985 which provides:
"Every foreign or alien insurer shall appoint the secretary of state to be its true and lawful attorney in this state upon whom, or some other person in his office during his absence he may designate, all lawful process in any action or proceeding against such insurer may be served, which shall constitute service on such insurer. Such appointment shall continue in force so long as any contract or other liability of such insurer in this state shall remain outstanding. Whenever such process shall be served upon the secretary of state he shall forthwith forward a copy of the process by prepaid registered mail to the person designated for the purpose by the insurer. Amended and reenacted Acts 1958, No. 125."
The cited statute makes no distinction between causes of action arising out of business transacted in and out of this state. The language of the pertinent statute is sufficiently broad to include "any action" which a citizen of this state may have against a foreign insurance corporation. We note that in Lusk v. Pacific Mutual *886 Life Ins. Co., D.C., 46 F.2d 502, the quoted statute was deemed to vest jurisdiction over an insurer when a foreign cause of action was involved. We likewise note that in Harmann v. United States Fidelity & Guaranty Co., D.C., 64 F.Supp. 36, a contrary result was reached.
In Babineaux v. Southeastern Drilling Corporation et al., La.App., 170 So.2d 518, suit for compensation benefits was filed in in Louisiana, based on an injury which occurred in a foreign country. The court found that considerable negotiations leading to the employment contract had transpired in this state. In considering the exception of no cause of action filed by the foreign compensation insurer, the court noted:
"Nevertheless, even in the event no recovery is allowable for Louisiana compensation under the principal demand, the plaintiff's alternative demand (for benefits payable under the Texas compensation law) states a cause of action which may be enforceable in the Louisiana courts.
Normally, the courts of one state will not enforce the workmen's compensation law of another state if the statutory compensation liability is inextricably bound up with a local administrative remedy; as this court has recently recognized in refusing to enforce a liability arising under the board-administered Mississippi compensation law. Woodham v. Travelers Insurance Co., La.App. 3 Cir., 161 So.2d 368. On the other hand, as the authorities cited in that decision recognize, a cause of action for compensation under the laws of a foreign state may be enforced by the courts of a forum state, if the statutory right to recovery under the foreign act is not so inextricably connected with a foreign administrative procedure. Thus, the Mississippi courts will adjudicate claims based upon the court-administered Louisiana compensation act. Floyd v. Vicksburg Cooperage Co., 156 Miss. 567, 126 So. 395 (1930)."
We are of the view that the provisions of LSA-R.S. 22:985 neither prohibit nor compel the courts of this state to deny or accept jurisdiction of causes of actions against foreign insurers where the cause of action arises in another state. We are also of the view that the applicable statute is sufficiently broad to vest our courts with discretion in the matter. We are fortified in this conclusion by the clear implication to the same effect contained in Babineaux, above, and by the result reached in Lusk v. Pacific Mutual Life Ins. Co., above.
Present defendant relies on Gray v. Decker, La.App., 229 So.2d 156; Woodham v. Travelers Insurance Company, La.App., 161 So.2d 368, and Reed v. Zurich General Accident & Liability Ins. Co., La.App., 83 So.2d 660, for the proposition that where neither the contract is entered into nor the accident occurs in Louisiana, our courts will not assume jurisdiction over a foreign corporation merely because such a defendant has appointed an agent for service of process in this state. In Gray, above, the court found that the contract of employment was entered into in Texas and that the accident occurred in Texas. In denying recovery under the Louisiana Compensation Statute, the court in Gray, above, observed:
"The jurisprudence is well established that recovery cannot be allowed under the Workmen's Compensation Act of Louisiana in cases where the contract of employment was not entered into in this State and where the accident did not occur in this State. Woodham v. Travelers Insurance Company, 161 So.2d 368 (La.App., 3d Cir. 1964writ refused); Reed v. Zurich General Accident & Liability Ins. Co., 83 So.2d 660 (La.App., 1st Cir. 1955); Cobb v. International Paper Company, 76 So.2d 460 (La.App., 2d Cir. 1954); Gardner v. Williams Brothers Corporation, 28 So.2d 74 (La. App., 2d Cir. 1946). Nor do the courts of this State have authority to grant workmen's compensation under the provisions of another state's workmen's compensation *887 statutes. Woodham v. Travelers Insurance Company, supra. Moreover, it appears appropriate to point out that plaintiff has not sought payment of compensation under the Texas statutes. Nor would the laws of Texas avail plaintiff anything, for such injuries are not compensable in that State."
Woodham v. Travelers Insurance Company, above, involved a claim for workmen's compensation benefits under both Louisiana and Mississippi statutes. The employment contract was confected in Mississippi and the accident occurred there. In rejecting plaintiff's claim under Louisiana law, the court stated:
"The law is settled that no recovery can be had under the Louisiana Workmen's Compensation Act in cases where the contract of employment was not entered into in this State and where the accident did not occur in this State. Cobb v. International Paper Company, La.App. 2 Cir., 76 So.2d 460; and Reed v. Zurich General Accident & Liability Insurance Co., La.App. 1 Cir., 83 So.2d 660."
We note that Woodham, above, cited Larson's, Volume 2, § 84.20, pp. 356-357, and 58 Am.Jur. Workmen's Compensation, § 71, pp. 255-256, as authority for its holding that since Mississippi's Compensation Law is commission administered, the Mississippi statute is so coupled with administrative procedure that a Louisiana court cannot fairly hear and determine a case governed by the Mississippi Compensation Law. It is significant that the decision in Woodham, above, does not indicate what result would obtain had Mississippi's law not been inexorably bound to a unique procedural remedy not available in Louisiana.
It appears that Reed v. Zurich General Accident & Liability Ins. Co., above, relied solely upon Cobb v. International Paper Company, La.App., 76 So.2d 460, in holding that Louisiana courts lack jurisdiction of a workmen's compensation claim where the contract was not a Louisiana contract and the accident occurred outside this state. Cobb, above, on the basis of Restatement of the Law on Conflict of Laws, Chapter 9, § 400, page 488, declined to apply Louisiana Compensation Law upon finding that the contract of employment and the disabling accident occurred in Mississippi.
We note that none of the authorities relied upon by defendant herein stands squarely for the proposition that, under no circumstances will our courts apply a foreign workmen's compensation statute, when the contract of employment was not entered into in Louisiana and the accident did not take place in this state.
Recapitulating the prior decisions, we find that in Gray v. Decker, above, it was noted that plaintiff did not seek recovery pursuant to Texas law and that, in any event, Texas law did not afford plaintiff recovery under the circumstances of the case. As formerly observed, Woodham v. Travelers Insurance Company, above, did not indicate what the result might have been therein had the foreign law sought to be applied not been coupled with an administrative remedial procedure. In Reed v. Zurich General Accident & Liability Ins. Co., above, recovery was not sought under the laws of a foreign state. Cobb v. International Paper Company, above, declined to apply Louisiana law in an instance where the contract of employment and the disabling accident both occurred in another jurisdiction.
Defendant correctly maintains that LSA-R.S. 23:1313 does not confer jurisdiction upon the courts of this state. The statute reads as follows:
"Suits in which the insurer is a defendant which arise out of accidents that happened in the State of Louisiana may be filed at the domicile of the employer or in the parish where the accident occurred or at the domicile of the plaintiff whether such plaintiff be the employee or his dependents, and at no other place, whether the action is direct against the insurer alone, or whether the employer is joined therein. Suits arising out of *888 accidents which occurred in other states where the courts of Louisiana have jurisdiction may be filed against the insurer in the parish of East Baton Rouge or at the domicile of the plaintiff, whether the plaintiff be the employee or his dependents. The insurer shall in all things be bound by and shall be subject to the awards, judgments, or decrees rendered against the insured. As amended Acts 1958, No. 414, § 1." (Emphasis ours.)
We also agree that cited statute merely establishes a rule of venue with respect to trial of workmen's compensation claims when the accident occurs in another state. The statute expressly declares its rules obtain "where the courts of Louisiana have jurisdiction." It does not purport to delineate the circumstances under which our courts will be vested with jurisdiction in such cases. Additionally, this court, in Hancock v. Liberty Mutual Insurance Company, La.App., 155 So.2d 47, specifically declared that LSA-R.S. 23:1313 relates to venue, not jurisdiction.
Defendant herein contends that Tennessee law provides that compensation benefits shall be awarded, if at all, by "The judge or chairman of the county court in which the accident occurred" and that such decisions are reviewed by an administrative board. On this basis, defendant maintains that Tennessee law establishes a unique procedural remedy which is inextricably related to the substantive provisions of Tennessee's statute. Therefore, defendant argues, the Louisiana courts cannot apply the Tennessee law. It is shown that the Tennessee law, Title 50-1018, provides for administrative assistance to compensation claimants and administrative approval of negotiated settlement of claims thereunder. On this basis, it is claimed that the law is so inextricably bound with administrative remedy that it is incapable of enforcement by the courts of this state which have no available counterpart.
It further appears, however, that the role of the Tennessee administrative agency is primarily advisory and that the administrative board concerned possesses no judicial authority. All disputed claims are triable before the Tennessee courts and judicial appellate review is available in all instances. We find, therefore, no substantial variance between Tennessee's procedural remedy and our own. We also find no reason why the courts of this state cannot fairly hear and determine a case governed by Tennessee's laws. In this regard we deem the present matter distinguished from Woodham, above, wherein the court held that Mississippi law could not be applied in this state because the Mississippi statute was commission administered.
We are therefore confronted with the following operative circumstances: (1) The Due Process Clause of the United States Constitution, as interpreted by the United States Supreme Court, neither prohibits nor compels assumption of jurisdiction by the courts of one state over a cause of action arising in another state; (2) the ancillary due process requirement that a defendant cannot be held in the forum court on a foreign cause of action unless defendant has substantial business in the forum state, independent of the cause of action in the foreign jurisdiction, is met in this instance; (3) our pertinent law, LSA-R.S. 22:985, does not restrict jurisdiction of our courts over foreign insurance corporations to actions arising in this state, and (4) the prohibition encountered in Woodham, above, namely, that the remedy sought to be enforced is inextricably bound with the administrative procedure of another jurisdiction, is not present in this instance.
The precise issue thus presented is res nova as to our own courts. A similar problem, however, was considered in Floyd v. Vicksburg Cooperage Co., 156 Miss. 567, 126 So. 395, in which the heirs of a deceased employee sued in Mississippi and were granted recovery under Louisiana law. In Floyd, above, the employment contract was made in Mississippi, but the accident occurred in Louisiana. The court rejected *889 the contention that the Louisiana remedy being exclusive, could not be extraterritorially applied. The argument that Louisiana Compensation Law was contrary to Mississippi Public policy, and therefore unenforceable in Mississippi, was also found to be without merit. The Mississippi court acknowledged the rule that the courts of one state will not enforce by comity the laws of a foreign state if the latter, with respect to the right asserted, violates the public policy of the forum state. The court further observed that, for the rule to apply, it must be shown that the foreign law is repugnant to the established principles of good morals or natural justice of the forum state, or that its application will be injurious to the interests of its own citizens. In disposing of this issue, the Mississippi court observed:
"It is enough to say here, as applied to the case at hand, that it is not contrary to our laws or conceptions of justice and good morals to give a remedy for wrongful death, and a survivorship of the cause of action, for that exactly is what we do under our own law; and upon the point of injury to our own citizens that distinctly would not be true here, for, if we did not allow the remedy in this cause, the plaintiffs herein, who are our own citizens, would have no remedy and no relief, since they are not able to get a remedy or any relief in the foreign state, because of the absence of the defendant, now and at all times from the beginning, from that state, and of any agent there on whom process may be served; and this amounts to a principle, for it would apply, not only to these particular plaintiffs, but generally to all in a similar situation."
We agree with the rule that state courts will not enforce the laws of other states that are repugnant to their own or are contrary to equity or good morals. We find no such repugnance in this instance. On the contrary, we find that the provisions of Tennessee's Workmen's Compensation Law are in harmony with our law on the subject matter.
From the above, we conclude that the exercise of jurisdiction herein is a matter of judicial discretion.
This court must determine on the basis of a rationale set of criteria whether jurisdiction should or should not be assumed in the instant suit. In Babineaux, above, it was suggested that a balancing of conveniences to the parties, a concept tantamount to the doctrine of forum non conveniens, was a viable criterion in determining whether jurisdiction should be assumed in cases similar to the instant suit. Not only the majority in Babineaux, but even the dissenting opinion of Hood, J., recognized the salience of such criterion when he stated:
"I agree with the majority that in determining whether the Louisiana court has jurisdiction over the non-resident defendant it is permissible to consider and to balance the inconveniences. As stated in the International Shoe Company case:
'An "estimate of the inconveniences" which would result to the corporation from a trial away from its "home" or principal place of business is relevant in this connection. Hutchinson v. Chase & Gilbert, supra (2 Cir.), 45 F. 2d (139) 141.".
Our legislature has recently authorized the application of the doctrine of forum non conveniens as evidenced by Act 294 of 1970 (LSA-C.C.P. art. 123). It is noteworthy that in Vicksburg, supra, the court was vitally concerned with whether the injured workman would have an effective remedy at law. We therefore consider it appropriate to apply the doctrine of forum non conveniens in determining whether jurisdiction should be assumed herein.
Gulf Oil Corp. v. Gilbert, 330 U.S. 501, 67 S.Ct. 839, 91 L.Ed. 1055, defines the *890 concept of forum non conveniens as follows:
"As formulated by Mr. Justice Brandeis, the rule is:
'Obviously, the proposition that a court having jurisdiction must exercise it, is not universally true; else the admiralty court could never decline jurisdiction on the ground that the litigation is between foreigners. Nor is it true of courts administering other systems of our law. Courts of equity and of law also occasionally decline, in the interest of justice, to exercise jurisdiction, where the suit is between aliens or nonresidents or where for kindred reasons the litigation can more appropriately be conducted in a foreign tribunal.' Canada Malting Co. Ltd. v. Paterson Steamships, Ltd., 285 U.S. 413, 422, 423, 52 S.Ct. 413, 415, 76 L.Ed. 837, 842, 843.
We later expressly said that a state court `may in appropriate cases apply the doctrine of forum non conveniens.' Broderick v. Rosner, 294 U.S. 629, 643, 55 S.Ct. 589, 592, 79 L.Ed. 1100, 1107, 100 A.L.R. 1133; Williams v. State of North Carolina, 317 U.S. 287, 294, n. 5, 63 S.Ct. 207, 87 L.Ed. 279, 283, 143 A.L.R. 1273.

* * * * * *
An interest to be considered, and the one likely to be most pressed, is the private interest of the litigant. Important considerations are the relative ease of access to sources of proof; availability of compulsory process for attendance of unwilling, and the cost of obtaining attendance of willing, witnesses; possibility of view of premises, if view would be appropriate to the action; and all other practical problems that make trial of a case easy, expeditious and inexpensive. There may also be questions as to the enforcibility of a judgment if one is obtained. The court will weigh relative advantages and obstacles to fair trial. It is often said that the plaintiff may not, by choice of an inconvenient forum, `vex,' `harass,' or `oppress' the defendant by inflicting upon him expense or trouble not necessary to his own right to pursue his remedy. But unless the balance is strongly in favor of the defendant, the plaintiff's choice of forum should rarely be disturbed.
Factors of public interest also have place in applying the doctrine. Administrative difficulties follow for courts when litigation is piled up in congested centers instead of being handled at its origin. Jury duty is a burden that ought not to be imposed upon the people of a community which has no relation to the litigation. In cases which touch the affairs of many persons, there is reason for holding the trial in their view and reach rather than in remote parts of the country where they can learn of it by report only. There is a local interest in having localized controversies decided at home. There is an appropriateness, too, in having the trial of a diversity case in a forum that is at home with the state law that must govern the case, rather than having a court in some other forum untangle problems in conflict of laws, and in law foreign to itself."
Regarding application of the rule of forum non conveniens to a two party dispute, the court in Koster v. Lumbermens Mutual Casualty Company, 330 U.S. 518, 67 S.Ct. 828, 91 L.Ed. 1067, observed:
"Where there are only two parties to a dispute, there is good reason why it should be tried in the plaintiff's home forum if that has been his choice. He should not be deprived of the presumed advantages of his home jurisdiction except upon a clear showing of facts which either (1) establish such oppressiveness and vexation to a defendant as to be out of all proportion to plaintiff's convenience, which may be shown to be slight or nonexistent, or (2) make trial in the chosen forum inappropriate because of considerations affecting the court's own administrative and legal problems. In any balancing of conveniences, a real *891 showing of convenience by a plaintiff who has sued in his home forum will normally outweigh the inconvenience the defendant may have shown."
Gulf Oil Corp. v. Gilbert, above, indicates that the doctrine of forum non conveniens should be invoked in instances of this nature only after the court has otherwise determined that it may lawfully assume jurisdiction over the dispute in question. Stated otherwise, the doctrine of forum non conveniens should usually be invoked to determine whether legally asserted jurisdiction should be assumed under the circumstances of the case.
The above authorities establish the general rule that the plaintiff's selection of a forum should rarely be disturbed and then only if the balancing of advantages and disadvantages is strongly in favor of the defendant. In the instant suit defendant admittedly conducts an insurance business in Louisiana and has appointed an agent for service of process in Louisiana. Defendant has not established that it is better able to defend itself in Tennessee. In this respect defendant has not shown that access to evidence is limited to suit conducted in Tennessee. Further, defendant has not shown that its principal place of business is in Tennessee; defendant is in fact a New York corporation. Presumably defendant has no more of a substantial relationship to Tennessee than it has to Louisiana. The sole question before this court on the merits is plaintiff's physical condition. Testimony of all medical personnel who treated plaintiff has been obtained by deposition. Defendant is thereby precluded from claiming such injustices as not being able to secure witnesses or physical evidence in its defense.
Plaintiff herein is a sixty-three year old Negro with a fifth grade education and is a man of modest means. Plaintiff, a Louisiana resident, might well be deprived of a remedy should he be forced to institute suit in Tennessee. Obviously plaintiff did not choose this forum with the intent of vexing, harassing, or oppressing defendant. Defendant has not demonstrated that it will suffer substantial inconvenience herein. Defendant has not only not established that it has suffered harassment or oppression out of all proportion to plaintiff's convenience, but it has not demonstrated suffering any harassment or oppression.
It has not been demonstrated that Louisiana courts will be faced with insurmountable administrative and legal problems in the instant suit. In this respect this court is called upon to decide only whether or not plaintiff's injuries are of such serious import as to preclude his employment at some gainful endeavor.
Fundamental reasons of practicality prompt our assumption of jurisdiction of claims for workmen's compensation predicated on accidents arising in foreign jurisdictions. We are aware that a vast number of both highly skilled and semiskilled workers are employed in industrial, scientific, technological and other construction projects in our now complex society. Mobility of such employees is as vital to the employees' ability to earn a livelihood as it is to the employer who must depend upon the availability of such workmen to fulfill construction contracts. It is common knowledge that construction workmen must move upon the completion of each project. We can readily see that in many instances considerable financial hardship would be imposed upon an injured employee to require that, in every case, recovery of compensation be restricted to the state in which the accident occurred. The economic factors involved weigh heavily in favor of the injured employee. The employee has neither the funds, resources nor facilities normally possessed by and available to the insurer.
Consideration of the doctrine of forum non conveniens, as we deem it applicable herein, impels our assumption rather than rejection of jurisdiction over this controversy.
*892 We now consider the question of plaintiff's disability. Plaintiff was injured November 4, 1966 when a wall collapsed upon him. He was immediately taken to a hospital where he was treated principally by Dr. Don L. Eyler, Orthopedist. Initial examination disclosed a fracture at the base or neck of plaintiff's right femur and in the trochanteric area, and a comminuted fracture of the shaft of plaintiff's left femur. On November 7, 1966, while performing an open reduction and internal fixation of plaintiff's upper right femur, Dr. Eyler noted a comminuted basilar neck fracture of the right femur. The fracture was immobilized with pins and a five inch metal plate. The left femur was repaired November 18, 1966, by open reduction and fixation with a compression plate held by nine stainless steel screws and plaintiff was placed in traction. Following the first surgery, plaintiff developed a psychosis with paranoid tendencies, evidencing such symptoms as refusing to talk, eat or assist himself in any manner. Such a development was not considered unusual considering the gravity of plaintiff's injuries, but complete neurological examination proved negative as to the normal causes of such a reaction. During plaintiff's hospitalization, he was seen by Dr. Louis Sampson, Psychiatrist, who found plaintiff to be a catatonic schizophrenic. On January 25, 1967, plaintiff was discharged from the hospital ambulatory with the aid of a walker. Examination by Dr. Eyler on February 21, 1967 disclosed moderate restriction of flexion of plaintiff's left knee. On May 2, 1967, plaintiff required only a cane for walking. At this time Dr. Eyler noted plaintiff's left knee extended 180 and would flex to 70, and also observed unexplained swelling of the left foot and ankle. X-rays revealed that plaintiff's fractures had healed in excellent position. Dr. Eyler prescribed increased activities and exercises to strengthen plaintiff's joints. Dr. Eyler last examined plaintiff on August 3, 1967, and found plaintiff ambulatory without support. Dr. Eyler also found that plaintiff walked with a good gait and had good strength in the lower extremities. X-rays revealed all fractures were solidly healed. Dr. Eyler was of the opinion plaintiff would be temporarily totally disabled for about a year and that plaintiff was permanently disabled to the extent of 25% of the body as a whole. Dr. Eyler also noted that plaintiff could do certain types of work but probably could never do the type of work in which plaintiff was engaged when injured. Dr. Eyler explained that plaintiff would have difficulty in squatting because of mild limitation of flexion of plaintiff's left knee.
Dr. Bryan M. Unkauf, Orthopedic Surgeon, examined plaintiff on February 16, and September 17, 1968. Plaintiff related a history of neck fracture and stiffness and neck pain. Plaintiff also complained of pain in the right hip, particularly during weather changes and also complained of stiffness in the left knee accompanied by pain in that joint upon walking. Dr. Unkauf found (1) reasonable range of neck movement accompanied by some pain on forward and right and left rotation; (2) plaintiff could fully flex his right hip with a slightly limited external rotation and abduction; (3) plaintiff's right knee extended to a range of 170 to 180 and flexed to 70 to 80 ; (4) plaintiff's knee was free of fluid, and (5) plaintiff's left leg was shortened 3/8ths inch. X-rays of the cervical spine showed no evidence of disease or recent fracture; narrowing of the C-5, C-6 intervertebral disc spaces, and good union of plaintiff's fractures of the right hip and left femur. Dr. Unkauf was of the opinion the abnormal condition of plaintiff's neck antedated plaintiff's injury, but was aggravated by the accident. He evaluated plaintiff's permanent disability to be 40% of the body as a whole. He was also of the opinion that plaintiff would endanger himself if plaintiff engaged in wrecking buildings and that plaintiff will experience considerable pain in his right hip, no matter what plaintiff does.
On July 2, 1968, plaintiff consulted Dr. Homer D. Kirgis, Neurosurgeon. Plaintiff *893 complained of back and neck pain. Examination showed moderate restriction of the head and neck, normal gait and normal stance. Muscles of the neck adjacent to the spine were moderately tight; plaintiff evidenced considerable discomfort upon application of pressure over the paraspinous muscles of the cervical region. X-rays revealed narrowing and chronically ruptured C-3, C-5 and C-6 intervertebral disc spaces, which were the source of pain. Dr. Kirgis saw plaintiff again on November 8, 1968, at which time plaintiff complained chiefly of aching and pain in the right hip and knee and some neck stiffness. Plaintiff displayed excellent mobility of the lower back and was able to squat and deep knee bend without apparent difficulty. Plaintiff displayed slight restriction of mobility of the head and neck and some tightness of cervical muscles. Dr. Kirgis was of the opinion that the ruptured discs were not the source of difficulty or discomfort as of the time of the examination. He was also of the view that the disc condition antedated plaintiff's injury, but may have been aggravated by the accident. It was Dr. Kirgis' opinion that any disability suffered by plaintiff was orthopedic or psychological, not neurological.
Plaintiff first consulted Dr. L. F. Magruder, Psychiatrist, on February 11, 1969. Based upon examination of plaintiff and plaintiff's history of a crushed neck bone, insomnia and episodes of depression and crying, Dr. Magruder was of the opinion plaintiff was disabled from a psychiatric point of view. Subsequently, after considering depositions of other medical authorities, Dr. Magruder considered that plaintiff suffered a schizophrenic reaction of the catatonic type after plaintiff's first operation following the accident. Dr. Magruder saw plaintiff on approximately ten occasions, the last being July 2, 1969. Dr. Magruder noted that plaintiff suffered from depression which prevented plaintiff from concentrating on plaintiff's immediate surroundings and impaired plaintiff's ability to remember recent events. Dr. Magruder referred plaintiff to the Baton Rouge Mental Health Clinic for an aptitude test and was informed by plaintiff that plaintiff had been refused the test because the health unit examiner concluded plaintiff could not handle a job that required standing. Dr. Magruder discharged plaintiff on the last visit. He felt that plaintiff's noted reactions were in remission and were unlikely to return. He was convinced that plaintiff needs some type of employment.
An examination conducted by Dr. Charles B. Cracraft on October 6, 1967, in essence, disclosed that plaintiff suffered a 15% disability of the right hip and a 15% to 20% disability of the left leg.
Sinie Bell Smith, plaintiff's sister, testified she went to Tennessee to care for plaintiff after his injury. Between November 10, and December 25, 1966, plaintiff's mental state was such that he did not recognize her. In late February, 1967, plaintiff was brought to Baton Rouge to Sinie Bell's home. At this time plaintiff was incapable of doing anything for himself, including clothing and bathing himself. This condition lasted for approximately one year. The witness also stated that plaintiff still has to be assisted to his feet after sitting in a low chair and that plaintiff's hand strength is so weak he cannot wring out a dish cloth. She acknowledged that treatment recommended by Dr. Magruder terminated plaintiff's insomnia and crying episodes.
Clarence Allen, a neighbor, confirmed in general the testimony of Sinie Bell Smith as to plaintiff's condition. He also stated that on several occasions he assisted in bathing plaintiff.
Plaintiff's testimony is essentially that he is 63 years of age and has only a 5th grade education. He also stated he has no strength in his hands and that he must be assisted in and out of the bath tub. He further stated that he has worked only as a laborer and that Dr. Magruder advised him to seek employment if it principally involved sitting down. Plaintiff *894 also stated he is unable to rise from a squatting position.
Title 50-1007(e) of the Tennessee Workmen's Compensation Statute defines total disability as follows:
"When any injury not otherwise specifically provided for in this chapter as amended, totally incapacitates the employee from working at an occupation which brings him an income, such employee shall be considered `totally disabled,' and for such disability compensation shall be paid as provided in subsection (d) hereof, provided that the total amount of compensation payable hereunder shall not exceed fourteen thousand dollars ($14,000), exclusive of medical and hospital benefits."
On the basis of the testimony before us, we are in accord with the finding of the lower court that plaintiff is disabled from engaging in any and all gainful employment. It is shown that plaintiff has done manual labor during his entire lifetime and that his sole opportunity for employment lies in this area. Although plaintiff's alleged inability to squat is not confirmed by medical testimony, the testimony conclusively shows that plaintiff has sustained serious permanent injury to his lower extremities. We recall that Dr. Eyler rated plaintiff's disability as a permanent 25% disability of the body as a whole. We also recall that Dr. Unkauf assessed plaintiff's disability as a 40% permanent disability of the whole body. Additionally, we note that Dr. Cracraft concluded that plaintiff has a 15% disability of the right hip and a 15% to 20% disability of the left leg. These circumstances, coupled with Dr. Unkauf's testimony that plaintiff will experience considerable future pain no matter what plaintiff does, and considered together with plaintiff's age, educational background and employment history, convince us plaintiff is incapable of working at an occupation which brings him an income.
The judgment of the trial court is affirmed at appellant's cost.
Affirmed.