ALFORD, Judge.
Appellant-third-party plaintiff, Hammond Square, a Louisiana joint venture composed of the Lassen Corporation and The Equitable Life Assurance Society of United States, appeals a judgment sustaining a declinatory exception of lack of in person-am jurisdiction filed by third-party defendant, Josephine M. Driscoll, (Driscoll), in her capacity as Insurance Commissioner for the State of Oregon.
We affirm.
FACTS
On July 26, 1985, Hammond Square filed an Amended Third-Party Petition against Driscoll, who was then the Insurance Commissioner for the State of Oregon. The principal demand in the proceeding below seeks damages from Hammond Square for personal injuries the original plaintiffs (Irene B. and Lee Edward Drake) claim to have suffered as a result of an injury at the Hammond Square Mall. The Amended Third Party Petition seeks to join Driscoll in these proceedings on the theory that her alleged negligence in performing official duties in regulating the North-West Insurance Company (North-West), now in liquidation, renders her liable to Hammond Square for any judgment rendered against it in favor of the original plaintiffs.
Hammond Square alleged that:
At all times pertinent hereto, Commissioner [Driscoll] maintained directly or indirectly sufficient contacts with the State of Louisiana through deputies commissioned by Commissioner to act on her behalf with respect to the issuance and administration of policies written which were to provide insurance coverage for Louisiana domiciliaries into which class third-party plaintiffs fall. On information and belief, the deputy commissioners maintained offices on the premises of Mid-Continent Underwriters in the Whitney Bank Building, New Orleans, Louisiana, and as deputies were charged with the same responsibilities as' she was charged in connection with powers and duties as set forth in the Oregon Revised Statutes.
It was further specifically alleged that Hammond Square’s damages were caused by the fault of Driscoll in the following:
(A) Failed to monitor the financial condition and ability to fulfill and manner of fulfillment of Northwest’s obligations and to review the nature of its operations and compliance with the insurance code.
(B) Failed to obtain and/or review with reasonable certainty the audit of the financial affairs of Northwest Insurance Company.
(C) Failed to investigate in the interest of its policyholders or for the public good into the affairs of the persons engaged in the business known as Northwest Insurance Company.
(D) Permitted Northwest Insurance Company to transact business when Commissioner knew or should have known that the management of such company was untrustworthy and so lacking in insurance experience as to make the continued operation of the company hazardous to the insurance buying public.
(E) Failed to suspend or revoke NorthWest’s certificate of authority or hold a hearing to consider the suspension or revocation of NorthWest’s *263 certificate of authority due to impairment of required capitalization.
(F) Failed to require that Northwest possess or maintain capital or surplus as required by law.
(G) Failed to hold public hearings to investigate facts and conditions which Commissioner knew or should have known existed which made the continuing operation of Northwest hazardous to the insurance buying public.
(H) Failed to make facts which Commissioner knew or should have known concerning the financial condition of Northwest available to Best’s Reference and Publication Service for dissemination to insurance agents, brokers and the insurance buying public.
(I) And further acts of failure and dereliction of duty to be proven on the trial of this cause.
In response to the Amended Third-Party Petition, Driscoll filed two exceptions on October 18, 1985. The first is an exception of no right of action and the second is an exception asserting lack of personal jurisdiction over Driscoll as Insurance Commissioner of Oregon.
A hearing was held on the exceptions on September 8, 1986, and on October 2, 1986, judgment was rendered granting Driscoll’s exception to the- Court’s jurisdiction. In his Reasons for Judgment, the trial judge indicated that he maintained the jurisdictional exception because Driscoll’s alleged conduct did not fall within the ambit of the Louisiana Long-Arm Statute, La.R.S. 13:3201, and the requirements for exercise of jurisdiction over a non-resident in conformity with the Due Process Clause of the Fourteenth Amendment to the United States Constitution are not met in this case. The trial judge found it unnecessary to consider Driscoll’s exception of no right of action since he determined the Court had no jurisdiction. This appeal, likewise, is limited to the jurisdictional exception.
The record established Driscoll’s contacts with Louisiana as limited to the following circumstances:
a. After Driscoll was appointed Receiver of North-West for purposes of rehabilitating the Company on May 25, 1984, she and one of her agents, Jack Sanguin, traveled to New Orleans, Louisiana, during the week of June 1, 1984, in order to assume control of the operations of NorthWest’s wholly owned subsidiary and managing general agent, Mid-Continent Underwriters, Inc. (Mid-Continent).
b. In late 1984, Driscoll traveled to Louisiana, as part of her function as Receiver for North-West in rehabilitation, to meet with a group of North-West’s Louisiana policyholders and brokers at their request.
As previously stated, the trial court held there were insufficient contacts to maintain in personam jurisdiction under La.R.S. 13:3201. Hammond Square’s assignments of error present the following issue for decision: Did the trial court err when it ruled there was no in personam jurisdiction over Driscoll under La.R.S. 13:3201.
We agree the record does not establish a relationship with Louisiana sufficient to satisfy the Constitutional limitations on this statute.
LAW
Louisiana’s Long-Arm Statute, La.R.S. 13:3201, was amended by our legislature in 1987 to read as follows:
A. A court may exercise personal jurisdiction over a nonresident, who acts directly or by an agent, as to a cause of action arising from any one of the following activities performed by the nonresident:
(1) Transacting any business in this state.
(2) Contracting to supply services or things in this state.
(3) Causing injury or damage by an offense or quasi offense committed through an act or omission in this state.
(4) Causing injury or damage in this state by an offense or quasi offense *264 committed through an act or omission outside of this state if he regularly does or solicits business, or engages in any other persistent course of conduct, or derives revenue from goods used or consumed or services rendered in this state.
(5) Having an interest in, using or possessing a real right on immovable property in this state.
(6) Non-support of a child or spouse or a former spouse domiciled in this state to whom an obligation of support is owed and with whom the nonresident formerly resided in this state.
(7) Parentage and support of a child who was conceived by the nonresident while he resided in or was in this state.
(8) Manufacturing of a product or component thereof which caused damage or injury in this state, if at the time of placing the product into the stream of commerce, the manufacturer could have foreseen, realized, expected, or anticipated that the product may eventually be found in this state by reasons of its nature and the manufacturer’s marketing practices.
B. In addition to the provisions of Subsection A, a court of this state may exercise personal jurisdiction over a nonresident on any basis consistent with the constitution of this state and of the Constitution of the United States.
The amendment to the statute, paragraph “B”, was designed to ensure that the long-arm jurisdiction of a Louisiana court extends to the limits allowed by due process. See Official Comment Acts 1987, No. 418. The Louisiana Supreme Court determined in Petroleum Helicopters, Inc. v. Avco Corporation, 513 So.2d 1188 (La.1987), that this amendment could be applied retroactively to cases which arose prior to the effective date of September 1, 1987. Our Supreme Court further held that:
When constitutional requirements of due process have been met ... there is no longer a need to inquire into whether the defendant's conduct falls within the reach of the long-arm statute. Now, under the express wording of the present Louisiana Long-arm Statute, the sole inquiry into jurisdiction over a nonresident is a one-step analysis of the constitutional due process requirements. If the assertion of jurisdiction meets the constitutional requirements of due process, the assertion of jurisdiction is authorized under the long-arm statute. The limits of the Louisiana Long-arm Statute and the limits of constitutional due process are now coextensive. 513 So.2d at 1192 (Footnote omitted.)
Therefore, the only issue left for us to decide is whether or not the assertion of jurisdiction over Driscoll meets the constitutional requirements of due process.
In Fryar v. Westside Habilitation Center, 479 So.2d 883, 888 (La.1985), our Supreme Court noted the requirements for due process:
The basic due process requirement for jurisdiction over a person is minimum contacts with the forum state. International Shoe Company v. Washington, 326 U.S. 310, 66 S.Ct. 154, 90 L.Ed. 95 (1945). An individual is not subject to the jurisdiction of a forum with which he has established no “contacts, ties or relations” International Shoe Company v. Washington, 326 U.S. at 319, 66 S.Ct. at 160, 90 L.Ed. at 104. The contacts with the forum state cannot be “isolated”, “fortuitous”, or “attenuated”. There must be a substantial connection between the defendant’s activities and the forum state, but physical entry into the forum state is not essential. Burger King Corp. v. Rudzewicz, 471 U.S. 462, 105 S.Ct. 2174, 85 L.Ed.2d 528 (1985)....
A person must have fair warning that an activity may subject him to foreign jurisdiction. Burger King, supra. This allows a potential defendant some assurance as to where he will be liable to suit. World-Wide Volkswagen Corporation v. Woodson, supra [444 U.S. 286 at 295, 100 S.Ct. 559 at 566, 62 L.Ed.2d 490 at 500 (1980)]; Burger King, supra. The requirement of fair warning is satisfied when a defendant has purposefully directed his activities at a resident of the forum, and the litigation results from foreseeable injuries arising out of or re *265 lating to those activities. International Shoe, supra; Helicópteros Nacionales de Colombia, S.A. v. Hall, 466 U.S. 408, 104 S.Ct. 1868, 80 L.Ed.2d 404 (1984); Burger King, supra....
When minimum contacts are present, they must be balanced with other factors to determine whether personal jurisdiction affords substantial justice, is reasonable and compatible with fair play. International Shoe Company v. Washington, supra; Shaffer v. Heitner, 433 U.S. 186, 97 S.Ct. 2569, 53 L.Ed.2d 683 (1977); World-Wide Volkswagen Corporation v. Woodson, supra; Burger King, supra; Restatement (2d) of Conflict of Laws, §§ 36, 37 (1971). Factors to be evaluated include the burden on the defendant, the forum state’s interest, the plaintiff’s interest, the system’s interest in obtaining the most efficient resolution of controversies, and the furtherance of fundamental substantive social policies. World-Wide Volkswagen Corp. v. Woodson, supra; Burger King, supra. (Footnotes omitted.)
With respect to the facts of the instant case, we find that there are insufficient contacts with this state to properly assert in personam jurisdiction over this defendant. Not every act of an out of state resident while in Louisiana will subject her to the jurisdiction of Louisiana courts. Jackson v. Bishop College, 359 So.2d 704 (La.App. 1st Cir.1978). We have been unable to find any case dealing with the precise situation here presented. The record reveals the following factors regarding the contacts made by Driscoll with the state of Louisiana. Driscoll came to Louisiana on two occasions after she had been appointed Receiver of North-West by an Oregon Court. Both trips were in connection with her duties as Receiver of NorthWest for rehabilitative purposes. Neither trip to Louisiana had any connection with Hammond Square’s allegations of Dris-coll’s negligence in regulating North-West before North-West was liquidated.
Driscoll has had no other contacts, ties or relations with Louisiana. She came to Louisiana for a very limited purpose — to fulfill her obligations as Receiver of an insurance company as required by Oregon law. Dris-coll did not personally benefit from Louisiana laws nor did she derive any revenue from her activity in Louisiana. By acting-as Receiver for North-West on two trips to Louisiana, Driscoll did not have fair warning that she might eventually be subject to Louisiana jurisdiction for her alleged negligence in allowing North-West to become an insolvent insurer. Likewise, it is obviously a burden on Driscoll to defend a lawsuit in Louisiana.
We find that such contacts are not sufficient to satisfy due process. Driscoll’s contacts with Louisiana do not solely, or in combination, amount to a persistent course of conduct or establish that she had derived revenue such that she would be amenable to Louisiana jurisdiction. Because there were insufficient contacts with Louisiana by Driscoll, we hold there is a constitutional barrier to the use of the Louisiana Long-Arm Statute to obtain jurisdiction over her. The requirements of due process and the “traditional notions of fair play and substantial justice” have not been satisfied.
Accordingly, for the foregoing reasons, the trial court’s decision determining there is no personal jurisdiction over this defendant is affirmed. Costs to be borne by appellant, Hammond Square.
AFFIRMED.