ALFORD, Judge.
This lawsuit arose out of an injury sustained by plaintiff/appellant, Timothy Fox, while playing rugby in the 1986 Louisiana State Rugby Club Annual Mardi Gras Invitational Rugby Tournament (“Tournament”). Mr. Fox, a student of St. Olaf College in Northfield, Minnesota, along with other members of his college rugby team left St. Olaf en route to the Tournament on Wednesday, February 5, 1986, traveling in “Winnebagos”. Mr. Fox and his companions arrived in New Orleans on February 6, 1986, where they attended Mardi Gras festivities, finally arriving in Baton Rouge on February 7, 1986. They reached Baton Rouge at approximately 11:00 p.m. and immediately proceeded to a party allegedly hosted by the L.S.U. Rugby Club; this party lasted until approximately 2:00 a.m.
The St. Olaf Rugby team was scheduled to play two matches on February 8,1986 at 9:00 a.m. and 3:00 p.m. During the last few minutes of the second game, Mr. Fox attempted to make a tackle with his head in a lowered position. He missed his opponent and struck the ground. As a result of the accident, Mr. Fox sustained a broken neck and is now a quadriplegic, confined to a wheelchair.
In the trial court, judgment was rendered dismissing the Board of Supervisors of Louisiana State University and Agricultural and Mechanical College (“L.S.U.”) and its insurer, Employers Casualty Company (“Employers”), on a motion for summary judgment. Additionally, judgments were rendered dismissing St. Olaf College, and its insurers, Pacific Employers Insurance Company (“Pacific”) and American Empire Surplus Lines Insurance Company (“American”) on exceptions of lack of in personam jurisdiction. Appeals taken by Mr. Fox and his parents, Denver C. Fox and Nora Palmer Fox, from these judgments were consolidated and are addressed herein.
PROPRIETY OF SUMMARY JUDGMENT IN FAVOR OF L.S.U.
Plaintiffs appeal the trial court ruling granting summary judgment in favor of L.S.U. and Employers arguing that L.S.U. contributed to the injuries they suffered by negligently allowing the parade grounds to be used during the Tournament in a negligent manner, failing to ascertain whether teams invited to the Tournament were properly trained, coached or supervised, and, in permitting the scheduling of two games or matches in the same day. Plaintiffs additionally assign as error the granting of the motion by Employers to strike plaintiffs’ demand for jury trial as to the insurer.
Summary judgment shall be rendered if the pleadings, depositions, answers to interratories, and admissions on file, together with the affidavits, show that there is no genuine issue as to material fact, and that the mover is entitled to judgment as a matter of law. La.C.C.P. art. 966; Lytell v. Goodyear Tire & Rubber Co., 439 So.2d *853 542 (La.App. 1st Cir.1983). When the evidence submitted on the motion leaves no relevant genuine issue of fact, and when reasonable minds must inevitably conclude that the mover is entitled to judgment on the facts before the court, the motion for summary judgment should be granted. Cates v. Beauregard Electric Cooperative, Inc., 328 So.2d 367 (La.1976), cert. denied, 429 U.S. 833, 97 S.Ct. 97, 50 L.Ed.2d 98 (1976). In the case sub judice, we can find no factual dispute regarding the circumstances surrounding L.S.U.’s allegedly negligent activities. Therefore, the remaining issue before this court, the reasonableness of L.S.U.’s conduct, is one of law. See Johnson v. Edmonston, 383 So.2d 1277 (La.App. 1st Cir.1980).
Randy Lee Mast testified by deposition that as Assistant Director of the Division of Leisure Sports, he is director of club sports and aquatic facilities. Mr. Mast described the sport clubs which he oversees as basically “student group[s] who monitor their own activities.” In his affidavit, Mr. Mast stated that the L.S.U. Athletic Department has no relation with club sports; participants in club sports are voluntary and are not recruited, paid or given athletic scholarships. Rugby club members purchase their own uniforms, shoes and equipment.
The Division of Leisure Sports provided the rugby club with campus facilities for practice and playing matches, access to some basic office supplies (such as: stationery, limited telephone use, rubber bands, paper clips, limited secretarial assistance and access to a photocopier), occasional use of rugby balls, chalk, tape measures and field-marking cones, and limited funding for tournament entry fees and out-of-town travel expenses. For the 1985-86 school year, the Division of Leisure Sports provided the rugby club with approximately $1,200.00 for such expenses. Minimal requirements were imposed by L.S.U. on the rugby club as on other “recognized student organizations”;[1] such as, the submission of a club “constitution”, submission of a list of current officers, and the procurement of a faculty advisor. The Division of Leisure Sports also required sport clubs to maintain a minimum of fifteen members.
Aside from these requirements and assistance, the rugby club was self-governed, self-sustaining and self generating. The rugby club did not have either a coach or an instructor.[2] The rugby club itself determined how often to practice and which activities, matches or tournaments to participate in. With regard to tournaments sponsored by the L.S.U. rugby club, the members were solely responsible for its organization and operation, and, proceeds from the Tournament belonged to the club to be spent at the discretion of the club officers.
Mr. Mast admitted that rugby, being a contact sport, provides a high likelihood of injury to participants, and that proper training and conditioning serve to reduce this risk. John Anderson, an athletic trainer in the L.S.U. Athletic Department, testified by deposition as to the training procedures used by L.S.U. with respect to its football team, as well as the warnings given to players to prevent injuries; the witness stated that he had no expertise or knowledge of rugby. Plaintiffs offered the affidavit of L. Stanley Shulman, Director of the Athletics and Sports Safety Division of Inner-City Testing & Consulting Corporation in Mineóla, New York, in support of their allegations. Mr. Shulman offered his opinion that L.S.U. had a duty to require teams invited to play in the Tournament to have a “trainer/man *854 ager/coach” because the supervision of a coach “would eliminate the degree of exposure to dangerous conditions” created by lack of rest or conditioning. Mr. Shulman further opined that “requiring and/or requesting that each of the teams play two games in one day is not in accordance with good and accepted practices and procedures in athletic competition” since participants are “extremely tired, prone to making mistakes, and more susceptible to injury” after playing one match. To the extent that Mr. Shulman’s affidavit expresses conclusions of law as to the duty owed by L.S.U. to Mr. Fox, it cannot be considered in deciding the motion for summary judgment. See Brock v. Newman, 543 So.2d 84 (La.App. 1st Cir.), writ denied, 548 So.2d 1251 (La.1989); Big S Trucking Co., Inc. v. Gervais Favrot, Inc., 450 So.2d 369 (La.App. 1st Cir.1983).
Plaintiffs essentially contend that L.S.U. had a duty to require that visiting rugby teams participating in the Tournament held by the L.S.U. rugby club be screened to ensure that each team had sufficient coaching and/or athletic training. Plaintiffs contend that L.S.U.’s breach of this duty resulted in the use of its facilities by incompetent players and the playing of rugby matches beyond the abilities and endurance of these players, culminating in Mr. Fox’s injuries. Plaintiffs have been unable to cite and independent research has failed to reveal, any instance where such a duty has been imposed on a university.[3]
After careful consideration of the record presented herein, we hold that, in the context of a leisure or club sport, a university has no affirmative duty to ascertain or inquire as to the level of fitness or preparedness of a visiting team participating in a tournament hosted by the university’s home team or club. In so holding, we find it unnecessary to decide whether L.S.U. can be held liable for the negligent actions of a leisure sport club, because we have determined that in any event, the rugby club did not owe Timothy Fox the duty alleged.
Having decided that the dismissal of L.S.U. on motion for summary judgment was proper, appellants’ assignment of error alleging entitlement to a jury trial as to L.S.U.’s insurer has been rendered moot.
IN PERSONAM JURISDICTION OVER ST. OLAF COLLEGE
Plaintiffs/appellants assign as error the dismissal of St. Olaf College on the basis of lack of personal jurisdiction arguing that St. Olaf College has sufficient contacts with Louisiana to require it to defend plaintiffs’ lawsuit in this state’s courts. Plaintiffs cite revenue received from Louisiana students, parents and alumni, the mailing of publications to Louisiana citizens, and events held in Louisiana as St. Olaf activities directed toward Louisiana. Additionally, plaintiffs allege that the rugby team of which Timothy Fox was a member was “fielded or supported” by St. Olaf College and allowed to participate in the Tournament held at L.S.U. without proper coaching, training, conditioning, practice or supervision.
Since the addition of paragraph B. to La.R.S. 13:3201,[4] Louisiana’s Long-Arm *855 Statute, by Acts 1987, No. 418, § 1, the sole inquiry into personal jurisdiction over a non-resident in Louisiana has been a one-step analysis of constitutional due process requirements. Superior Supply Co. v. Associated Pipe and Supply Co., 515 So.2d 790 (La.1987); Petroleum Helicopters, Inc. v. Avco Corp., 513 So.2d 1188 (La.1987); Briley Marine Service, Inc. v. Toups, 551 So.2d 755 (La.App. 1st Cir.), writ denied, 553 So.2d 476 (La.1989); Drake v. Hammond Square, 525 So.2d 261 (La.App. 1st Cir.1988). Additionally, the Louisiana Supreme Court has held that La.R.S. 13:3201 B. is to be applied retroactively to those cases which arose prior to the effective date of September 1, 1987. Id.
In Fryar v. Westside Habilitation Center, 479 So.2d 883 (La.1985), our Supreme Court set forth the constitutional due process considerations for the assertion of in personam jurisdiction:
The basic due process requirement for jurisdiction over a person is minimum contacts with the forum state. International Shoe Company v. Washington, 326 U.S. 310, 66 S.Ct. 154, 90 L.Ed. 95 (1945). An individual is not subject to the jurisdiction of a forum with which he has established no “contacts, ties or relations” International Shoe Company v. Washington, 326 U.S. at 319, 66 S.Ct. at 160, 90 L.Ed. at 104. The contacts with the forum state cannot be “isolated”, “fortuitous”, or “attenuated”. There must be a substantial connection between the defendant’s activities and the forum state, but physical entry into the forum state is not essential. Burger King Corp. v. Rudzewicz, 471 U.S. [462], 105 S.Ct. 2174, 85 L.Ed.2d 528 (1985). Plaintiffs residence is not irrelevant to the inquiry, because defendant’s relationship with plaintiff may enhance defendant's contacts with the forum. Keeton v. Hustler Magazine, Inc., 465 U.S. 770, 104 S.Ct. 1473, 79 L.Ed.2d 790 (1984).
A person must have fair warning that an activity may subject him to foreign jurisdiction. Burger King, supra.[5] This allows a potential defendant some assurance as to where he will be liable to suit. World-Wide Volkswagen Corporation v. Woodson, supra [444 U.S. 286, 100 S.Ct. 559, 62 L.Ed.2d 490 (1980)]; Burger King, supra. The requirement of fair warning is satisfied when a defendant has purposefully directed his activities at a resident of the forum, and the litigation results from foreseeable injuries arising out of or relating to those activities. International Shoe, supra; Helicopteros Nacionales de Colombia, S.A. v. Hall, 466 U.S. 408, 104 S.Ct. 1868, 80 L.Ed.2d 404 (1984); Burger King, supra.
A nonresident party to a contract consummated in the' forum state is subject to the forum state’s in personam jurisdiction on causes of action arising out of the transaction. McGee v. International *856 Life Ins. Co., supra [355 U.S. 220, 78 S.Ct. 199, 2 L.Ed.2d 223 (1957) ]; Burger King, supra. Compare Hanson v. Denckla, 357 U.S. 235, 78 S.Ct. 1228, 2 L.Ed.2d 1283 (1958). Employee status does not insulate one from jurisdiction. Calder v. Jones, 465 U.S. 783, 104 S.Ct. 1482, 79 L.Ed.2d 804 (1984).
When minimum contacts are present, they must be balanced with other factors to determine whether personal jurisdiction affords substantial justice, is reasonable and compatible with fair play. International Shoe Company v. Washington, supra; Shaffer v. Heitner, 433 U.S. 186, 97 S.Ct. 2569, 53 L.Ed.2d 683 (1977); World-Wide Volkswagen Corporation v. Woodson, supra; Burger King, supra; Restatement (2d) of Conflict of Laws §§ 36, 37 (1971). [Footnotes omitted.]
Factors which may be evaluated include: (1) the burden on the defendant; (2) the forum state’s interest in adjudicating the dispute; (3) the plaintiffs interest in obtaining convenient and effective relief; (4) the interstate judicial system’s interest in obtaining the most efficient resolution of controversies; and (5) the shared interest of the several states in furthering fundamental substantive policies. World-Wide Volkswagen Corp. v. Woodson, 444 U.S. at 292, 100 S.Ct. at 564. Minimum requirements inherent in the concept of “fair play and substantial justice” may defeat the reasonableness of jurisdiction even if a defendant has purposefully engaged in forum activities. Id.
St. Olaf is a Minnesota based Lutheran college, offering a liberal arts curriculum to approximately 3,500 enrolled students. The record reveajs that only two students from Louisiana attended St. Olaf between 1983 and 1987.[6] St. Olaf had ten prospective students from Louisiana for the 1988-89 academic year to whom college brochures were mailed. St. Olaf has approximately forty-two alumni residing in Louisiana to whom several publications are mailed: the St. Olaf Magazine, a class newsletter, and “phone-a-thon” mailers. St. Olaf directs the mailing of one publication, the St. Olaf Bulletin, to pastors of Lutheran churches in Louisiana. This publication is mailed out once per year throughout the country and is a promotional piece for St. Olaf’s summer conference on music and theology. St. Olaf has no record of anyone from Louisiana ever attending the conference.
When notified of alumni social events hosted by alumni, St. Olaf forwards “supplies” for their use, such as: name tags, a sign-in sheet, college brochures, and a report form to be returned to St. Olaf. The only such recorded event held in Louisiana was on May 25, 1985 in Kenner, hosted by a student’s parents; no St. Olaf staff member was present. The only function held in Louisiana ever attended by St. Olaf personnel occurred in February of 1984 when the college president and his wife attended a meeting of the Council of College Presidents in New Orleans. While there for the meeting, the president and his wife also attended an alumni dinner at a New Orleans restaurant with twenty-four alumni and parents.
Although evidence was presented as to the amount of revenue generated from Louisiana students, parents and alumni, there was no showing of how the Louisiana residents came to be students at St. Olaf in the first place. Whether a university actively solicits students from another state has been found to be a relevant inquiry on the issue of personal jurisdiction as to the university. In Jackson v. Bishop College, 359 So.2d 704 (La.App. 1st Cir.1978), an out-of-state college was found to have sufficient contacts with Louisiana for the assertion of jurisdiction where college representatives entered the state, negotiated with the plaintiff and executed an athletic scholorship agreement in Louisiana, where the college later allegedly breached the agreement. In Hahn v. Vermont Law School, 698 F.2d 48 (1st Cir.1983), personal jurisdiction was maintained over the defendant law school in Massachusetts where the plaintiff, an alumnus of the school, had first learned of the school by way of an article in a Boston newspaper, the school *857 occasionally advertised in Boston newspapers, school faculty members recruited students by visiting five Massachusetts colleges, and where Massachusetts students consistently comprised ten percent of the school’s freshmen classes.[7] The cause of action in Hahn arose over a failing grade plaintiff received while a student, which he had unsuccessfully sought to have changed during college and after graduation. The plaintiff in that case contended that the school breached their contract by allowing an instructor to use arbitrary grading procedures and by the administration failing to review and investigate his claim.
In the instant case, the record shows that St. Olaf made no other effort to obtain Louisiana students than to mail brochures on request and to inform Lutheran ministers in Louisiana of the existence of the school by the annual mailing of the St. Olaf Bulletin. No recruiters were sent to Louisiana. Revenues received from Louisiana residents represent less than one percent of St. Olaf revenues. We also are able to distinguish the Jackson and Hahn cases on the fact that, in the case sub judice, the cause of action on which the lawsuit is based did not arise out of defendant’s activities in the forum state. Plaintiffs’ cause of action involves a failure of a Minnesota university to provide adequate supervision over a California student’s extracurricular participation on a rugby team; it did not arise out of the solicitation of Louisiana students or the solicitation of donations from Louisiana residents.
Plaintiffs would have established a stronger connection to this state had it been shown that Mr. Fox’s rugby team was actually an officially recognized St. Olaf team which St. Olaf had purposefully sent to Louisiana in a negligent fashion; however, this fact was not sufficiently demonstrated. St. Olaf has filed an answer to interrogatories stating that “there is no St. Olaf College rugby team ... ”; and that St. Olaf “has no record relative to any rugby team participating in any tournament in Louisiana.” St. Olaf further responded that “it furnished no financial assistance to a rugby team similar to the club described in this interrogatory.” Additionally, the affidavit of William C. Komsi, Vice President and Treasurer of St. Olaf College, was filed into the record and stated, in pertinent part:
a. The rugby group was not a part of the Department of Athletics at St. Olaf College;
b. St. Olaf College did not supply equipment or uniforms to the rugby group;
c. St. Olaf College did not furnish a coach or an adviser to the rugby group;
d. St. Olaf College did not arrange for the rugby group’s participation in the rugby match in Baton Rouge, Louisiana;
e. St. Olaf College did not arrange for the rugby group’s transportation to Baton Rouge, Louisiana for the rugby match;
f. St. Olaf College did not provide any financial support to the rugby group in connection with its transportation to and participation in the rugby match in Baton Rouge, Louisiana;
g. No officer, faculty member, employee, agent or representative of St. Olaf College accompanied the rugby group to Baton Rouge, Louisiana; and
h. The rugby group’s participation in the rugby match in Baton Rouge, Louisiana was not sponsored or authorized by St. Olaf College.
The only testimony linking St. Olaf College to the rugby team of which Timothy Fox was a member was his own affidavit wherein he offered the hearsay statement that he had heard from another rugby player on the team that Dr. David Schodt, a St. Olaf professor, was the faculty advisor for the team.[8]
*858 Less is required to support jurisdiction when the cause of action arises from the defendant’s contacts with the forum than when it does not. International Shoe Co., 326 U.S. at 317, 66 S.Ct. at 158. See also, Helicopteros Nationales de Columbia, S.A. v. Hall, 466 U.S. 408, 104 S.Ct. 1868, 80 L.Ed.2d 404 (1984). In this case, it was not established that the cause of action arose from St. Olaf’s contacts with this state, and we do not think that there exists sufficient contacts otherwise, to support personal jurisdiction in the state.
ANNULMENT OF PRELIMINARY DEFAULT AGAINST AMERICAN EMPIRE SURPLUS LINES INSURANCE COMPANY
American was named as a defendant in plaintiffs’ second amended petition filed on April 26, 1988. Service was made on American through the Louisiana Secretary of State on May 11, 1988. Plaintiffs filed a third amending petition on June 21, 1988, wherein additional claims were made relating to Illinois National Insurance Co. and Audubon Indemnity Co., not parties to these appeals. American was served with this third amended petition on July 6, 1988. On July 7, 1988, plaintiffs obtained a preliminary default against American. Thereafter, American filed its declinatory exception on September 27, 1988. The court rendered judgment December 19, 1988, granting American’s Motion to Annul the Preliminary Default. Plaintiffs assign as error the granting of this motion.
The Louisiana Code of Civil Procedure, in Article 1151, provides in pertinent part as follows:
A defendant shall plead in response to an amended petition within the time remaining for pleading to the original pleading or within ten days after service of the amended petition, whichever period is longer, unless the time is extended under Article 1001.
(Emphasis added.) Additionally, La.C.C.P. art. 5053, in pertinent part, provides that “[t]he word ‘shall’ is mandatory, and the word ‘may’ is permissive.” See also Ray v. South Central Bell Telephone Co., 315 So.2d 759 (La.1975); D’Agostino v. City of Baton Rouge, 504 So.2d 1082 (La.App. 1st Cir.1987); Succession of Thibaut, 224 So.2d 852 (La.App. 1st Cir.1969). Thus, defendants served with an amended petition are required to file an answer within the time-frame set out in article 1151. The legislature has made no exception to this requirement for those defendants who are not addressed by the allegations of the amended petition. Where the legislature makes no exceptions, the court cannot do so. Owles v. Jackson, 7 So.2d 192 (La.1942). Consequently, American had ten days after the service of the amended petition to plead, or until July 16, 1988. Since the preliminary default was taken prior to that time, the trial court was correct in annuling the judgment.
Plaintiffs cite Merrill v. Lattimore, 12 Rob. 138 (La.1845), and Spotts v. Lange, 7 La. 182 (1834), for the proposition that a defendant need not answer allegations in an amending petition which do not affect that defendant. These cases were decided prior to the enactment of the Code of Civil Procedure which became effective January 1, 1961. Insofar as they are contrary to the provisions of La.C.C.P. art. 1151, these opinions are no longer controlling.
JURISDICTION OYER PACIFIC EMPLOYERS INSURANCE COMPANY AND AMERICAN EMPIRE SURPLUS LINES INSURANCE COMPANY
Plaintiffs assign as error the trial court judgments sustaining the exceptions of *859 lack of personal jurisdiction as to St. Olaf s primary and excess insurers, Pacific and American. An issue presented for resolution regarding jurisdiction over these insurers is whether Louisiana can exercise personal jurisdiction over a foreign insurer doing business in this state when its insured is a non-resident not subject to the jurisdiction of Louisiana- courts.
In Farrell v. Wilbert, 369 So.2d 1087 (La.App. 1st Cir.), writ denied, 371 So.2d 1342 (La.1979), the same issue was raised by an insurer who argued, “absent jurisdiction over its insured the plaintiff cannot have jursidiction and/or a right of action against the insurer.” In Farrell, plaintiff, a Louisiana resident, was injured in Louisiana. The insured of the defendant insurer, Employers Liability Insurance Co. of Wisconsin (“Employers Liability”), had been dismissed on the basis of jurisdiction, and that dismissal was not appealed. Employers Liability was a foreign insurer, authorized to do and doing business in Louisiana, which had been issued a Certificate of Authority to transact business in Louisiana under La.R.S. 22:986. The Farrell court held that an insurance company may be sued under the Louisiana Direct Action Statute, La.R.S. 22:655, where there is an independent basis of jurisdiction which satisfies due process requirements. 369 So.2d at 1088. Jurisdiction was maintained as to Employers Liability.
It was stipulated herein that Pacific [9] was a foreign insurer authorized to do and doing business in Louisiana and that American was an unauthorized insurer doing business in Louisiana through an authorized surplus lines broker under La.R.S. 22:1262.1. Thus, appellants argue that Farrell compels the reversal of the trial court on the issue of jurisdiction. Several Louisiana court decisions provide authority for a trial court to apply the doctrine of forum non conveniens, which allows a trial court to decline to accept jurisdiction over a defendant even though the exercise of jurisdiction is authorized under due process considerations.
In Stewart v. Litchenberg, 148 La. 195, 86 So. 734 (1920), the supreme court held that courts:
[M]ay, in their discretion, entertain jurisdiction over controversies, where personal citation is had within their territorial limits, between the citizens of other states, when it is within their power to do full and complete justice between the parties. But this power arises from no duty or inherent right in the litigants, and solely under the rule of comity referred to. Hence, when it appears that they may not be capable of doing full and exact justice between the parties because of a want of knowledge of the laws of another state, or where the amount involved is small, and the defendant will be subjected to great and unnecessary expense and inconvenience, and the investigation will be surrounded with great difficulties, which can be avoided by suing at the defendant’s domicile, courts may, and generally do, decline jurisdiction.
The subsequent case of Union City Transfer v. Fields, 199 So. 206 (La.App. 1st Cir.1940), affirmed a dismissal in the trial court of a suit on a promissory note between Texas residents. The Union City court, citing Stewart, held, “[w]e interpret ... [the Stewart ] decision as leaving it to the discretion of the presiding judge as to whether or not he shall entertain jurisdiction.”
In the case of Smith v. Globe Indemnity Co., 243 So.2d 882 (La.App. 1st Cir.1971), this court acknowledged the availability in Louisiana of the doctrine of forum non conveniens. The Smith court recognized that the United States Constitution does not compel a state to exercise jurisdiction over a foreign corporation doing business in the state when the cause of action arose in another state. The court concluded that where no Louisiana law exists compelling the exercise of jurisdiction in this state over a foreign defendant, the exercise of *860 jurisdiction is a matter of judicial discretion. 243 So.2d at 885, 889. The Smith court adopted factors to be considered in the exercise of that discretion as set out in Gulf Oil Corp. v. Gilbert, 330 U.S. 501, 67 S.Ct. 839, 91 L.Ed. 1055 (1947):
An interest to be considered, and the one likely to be most pressed, is the private interest of the litigant. Important considerations are the relative ease of access to sources of proof; availability of compulsory process for attendance of unwilling, and the cost of obtaining attendance of willing, witnesses; possibility of view of premises; if view would be appropriate to the action; and all other practical problems that make trial of a case easy, expeditious and inexpensive. There may also be questions as to the enforcibility of a judgment if one is obtained. The court will weigh relative advantages and obstacles to fair trial. It is often said that the plaintiff may not, by choice of an inconvenient forum, “vex,” “harass,” or “oppress” the defendant by inflicting upon him expense or trouble not necessary to his own right to pursue his remedy. But unless the balance is strongly in favor of the defendant, the plaintiffs choice of forum should rarely be disturbed.
Factors of public interest also have place in applying the doctrine. Administrative difficulties follow for courts when litigation is piled up in congested centers instead of being handled at its origin. Jury duty is a burden that ought not to be imposed upon the people of a community which has no relation to the litigation. In cases which touch the affairs of many persons, there is reason for holding the trial in their view and reach rather than in remote parts of the country where they can learn of it by report only. There is a local interest in having localized controversies decided at home. There is an appropriateness, too, in having the trial of a diversity case in a forum that is at home with the state law that must govern the case, rather than having a court in some other forum untangle problems in conflict of laws, and in law foreign to itself. [Footnote omitted.]
The Gulf Oil factors have subsequently been reaffirmed in Piper Aircraft Co. v. Reyno, 454 U.S. 235, 102 S.Ct. 252, 70 L.Ed.2d 419 (1981).
The doctrine of forum non conve-niens has been recognized by Louisiana courts in Simms v. Coastal Oil & Fuel Corp., 200 La. 1080, 9 So.2d 428 (1942), and Symeonides v. Cosmar Compania Naviera, 433 So.2d 281 (La.App. 1st Cir.), writ denied, 440 So.2d 731 (La.1983), cert. denied, 465 U.S. 1079, 104 S.Ct. 1442, 79 L.Ed.2d 762 (1984); however, its application was found to be inappropriate in those cases. Two other cases, Chaney v. Williher, 205 So.2d 770 (La.App. 1st Cir.1967), writ refused, 251 La. 940, 207 So.2d 541 (1968), and Trahan v. Phoenix Ins. Co., 200 So.2d 118 (La.App. 1st Cir.), writ refused, 251 La. 47, 202 So.2d 657 (1967), held that forum non conveniens did not exist in Louisiana with regard -to intrastate changes of venue; these cases have been rendered obsolete by the enactment of La. C.C.P. art. 123 A.[10]
We are compelled to follow the decisions of our supreme court and of this appellate court, finding the existence of the doctrine of forum non conveniens in Louisiana. A contrary result has been reached by the Fifth Circuit in Kassapas v. Arkon Shipping Agency, Inc., 485 So.2d 565 (La.App. 5th Cir.), writ denied, 488 So.2d 203 (La.1986), cert. denied, 479 U.S. 940, 107 S.Ct. 422, 93 L.Ed.2d 372 (1986). This decision has been criticized. See Duplantier, Louisiana: A Forum Conveniens Vel Non, 48 La.L.Rev. 761 (1988).[11] Further, we are not bound by the decisions of other circuits. Nungesser v. Nungesser, 558 So.2d 695 (La.App. 1st Cir.1990). We therefore *861 choose not to follow Kassapas, as it is contrary to existing jurisprudence in this state.
The initial inquiry concerns whether personal jurisdiction exists over the defendants; once the propriety of jurisdiction is established, the doctrine of forum non con-veniens can be applied, allowing the court to decline jurisdiction in appropriate cases.[12] Herein both insurers, Pacific and American, are doing substantial business in Louisiana which would render them subject to the jurisdiction of our court system. However, since no Louisiana residents are involved in the litigation, the interest of the Louisiana judicial system in the litigation is slight. The burden and cost of a jury trial ought not be imposed on the citizens of this community where the only connexity is the occurrence of the accident here, particularly where the actions or inactions allegedly responsible for the situation occurred in Minnesota. Compelling defendants to litigate in this state would be particularly burdensome and costly to the litigants as the majority of witnesses reside in other states (i.e., California, Minnesota, and Tennessee). The only witnesses from Louisiana whose testimony appears of record relate to the alleged negligence of L.S.U., which is no longer at issue since we find herein no liability as to L.S.U. Thus, we find that under these circumstances, the application of the doctrine of forum non conveniens is appropriate. Accordingly, the judgments of the trial court dismissing Pacific and American should be affirmed.
For the reasons assigned herein, we affirm the trial court judgments: granting summary judgment in favor of Board of Supervisors of Louisiana State University and Agricultural and Mechanical College; sustaining the exception of lack of jurisdiction as to St. Olaf College; and dismissing plaintiffs’ suit as to Pacific Employers Insurance Company and American Empire Surplus Lines Insurance Company. All costs of these appeals are to be borne by appellants herein.
AFFIRMED.
ON APPLICATION FOR REHEARING
Rehearing Granted.
Whereas the doctrine of forum non conveniens is procedural, Louisiana courts must remain accessible under the constitutional mandate of La. Const. Art. 1, § 22, when a plaintiffs claim cannot be entertained in any other court. Consequently, we amend the trial court judgment dismissing Pacific Employers Insurance Company and American Empire Surplus Lines Insurance Company, so that these parties are dismissed without prejudice. Plaintiffs are thereby free to reinstate action against these two defendants in a Louisiana court should access to all other forums be denied them.
AFFIRMED AS AMENDED.

. Other recognized sport clubs included clubs for cycling, karate, soccer, lacrosse, martial arts, sailing, water-skiing, and fencing. According to Mr. Mast, such student organizations serve educational purposes by enabling students to train themselves for positions of responsibility and leadership through the experience of handling decisions and details of the club. Additionally, L.S.U. in its Handbook of Rights and Responsibilities in the Student-University Relationship, cites the “basic principle of 'freedom of association’ ” as a reason for the recognition of student organizations.

. Several of the other sport clubs have had instructors who either served "gratis” or who were paid by the club.

. Only one case was cited which involved an instance where a player of a college team sued the university of an opposing college team: Hanson v. Kynast, 24 Ohio St.3d 171, 494 N.E.2d 1091 (1986). In Hanson, plaintiff, an Ohio State University lacrosse player, was injured when he "grabbed" an Ashland University player during a lacrosse game in defense of a teammate; the resulting injury produced paralysis. The Hanson court held that a principal-agent relationship did not exist as to Ashland University and its lacrosse players such that it was liable for their actions.

. La.R.S. 13:3201 provides as follows:
A. A court may exercise personal jurisdiction over a nonresident, who acts directly or by an agent, as to a cause of action arising from any one of the following activities performed by the nonresident:
(1) Transacting any business in this state.
(2) Contracting to supply services or things in this state.
(3) Causing injury or damage by an offense or quasi offense committed through an act or omission in this state.
(4) Causing injury or damage in this state by an offense or quasi offense committed through an act or omission outside of this state if he regularly does or solicits business, or engages in any other persistent course of *855 conduct, or derives revenue from goods used or consumed or services rendered in this state.
(5) Having an interest in, using or possessing a real right on immovable property in this state.
(6) Non-support of a child, parent, or spouse or a former spouse domiciled in this state to whom an obligation of support is owed or with whom the nonresident formerly resided in this state.
(7) Parentage and support of a child who was conceived by the nonresident while he resided in or was in this state.
(8) Manufacturing of a product or component thereof which caused damage or injury in this state, if at the time of placing the product into the stream of commerce, the manufacturer could have foreseen, realized, expected, or anticipated that the product may eventually be found in this state by reason of its nature and the manufacturer’s marketing practices..
B. In addition to the provisions of Subsection A, a court of this state may exercise personal jurisdiction over a nonresident on any basis consistent with the constitution of this state and of the Constitution of the United States.

. The Burger King Court cited Hanson v. Denckla, 357 U.S. 235, 78 S.Ct. 1228, 2 L.Ed.2d 1283 (1958), in defining when a potential defendant should reasonably anticipate out-of-state litigation:
"[I]t is essential in each case that there be some act by which the defendant purposefully avails itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws.”
Burger King Corp. v. Rudzewicz, 105 S.Ct. at 2183.

. Plaintiff has never been a Louisiana resident and currently resides in California.

. The plaintiff in the Hahn case initially requested the school to send him an application for admission and thereafter pre-admission negotiations were conducted by mail.

. The deposition of Dennis V. Griffin, Vice President of College Relations at St. Olaf, reflects the following question and answer:
Q. Now, do you know anything about the rugby club here at St. Olaf?
A. Very little.
*858 Thereafter, Mr. Griffin was instructed by counsel "not to answer any questions with regard to the team that was either sanctioned or not sanctioned by the college unless it pertains to jurisdiction." Plaintiffs have failed to compel further discovery on the issue under available discovery sanctions. See La.C.C.P. art. 1469. Appellants assert in their appellate memorandum that the trial judge granted a protective order limiting discovery as to St. Olaf to personal jurisdiction questions only; however, the minutes of court in the record for July 21, 1988 reflect that "[w]ith reference to the motion for protective order filed on behalf of St. Olaf College ... [counsel for St. Olaf and counsel for appellants] agree that the deposition schedule[d] for August 1, 1988, will be restricted to the issue of jurisdiction only.”

. Although appellants note the existence of this stipulation as to Pacific, it does not appear of record. Nevertheless, we find it unnecessary to remand for supplementation of the record because of the holding reached herein.

. Statutory bases for the application of forum non conveniens can be found in La.C.C.P. art. 123B., relative to claims based solely on federal statutes (except maritime and 46 U.S.C. § 688 claims), and in La.R.S. 13:1706, relative to child custody proceedings. The doctrine of forum non conveniens has been limited in federal forums to the extent that it is not available when 28 U.S.C. § 1404(a), a change of venue statute, applies. See Hartford Fire Ins. Co. v. Westinghouse Electric Corp., 725 F.Supp. 317 (S.D.Miss.1989).

. Judge Duplantier in his article, urges that Kassapas be overruled, asserting that the failure *861 of Louisiana to apply forum non conveniens would result in Louisiana becoming a “welcome center" for foreign litigants trying foreign causes of action, an obvious burden on Louisiana’s taxpayers and judicial system. The desirability of maintaining the doctrine of forum non conveniens was previously noted in Notes, Conflict of Laws — Jurisdiction of State Courts — Forum Non Conveniens, 16 La.L.Rev. 560 (1956).

. We note that La.R.S. 22:655 is not a basis for jurisdiction, it merely provides a right of action. Nor does La.R.S. 13:3201 require the assertion of jurisdiction in this instance as it provides that a court “may” exercise personal jurisdiction over a non-resident in the enumerated circumstances.